UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-09003-CAS(VBKx) | Date | March 2, 2015 |
|---|---|---|---|
| Title | ALEXANDER LEIBMAN v. ALEXANDER SASHA PRUPES, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     (IN CHAMBERS): DEFENDANT'S MOTION TO DISMISS
(Dkt. No. 16)

The Court finds this motion appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing date of March 2, 2015, is vacated, and the matter is hereby taken under submission. Furthermore, the parties' Stipulation to Continue Motion to Dismiss filed February 27, 2015[23] is hereby moot.

## I.    INTRODUCTION

On November 20, 2014, plaintiff Alexander Leibman filed this lawsuit against defendant Alexander "Sasha" Prupes and Does 1 through 10. Dkt. No. 1. On January 15, 2015, plaintiff filed the operative First Amended Complaint ("FAC"). Dkt. No. 15. The gravamen of the FAC is that defendant, who was formerly in business with plaintiff, attempted to blackmail and extort money from plaintiff through threats that he would report plaintiff for tax fraud or evasion. Plaintiff asserts claims for civil blackmail and extortion, and for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

On February 2, 2015, defendant filed a motion to dismiss the FAC on the grounds that (1) the Court lacks subject matter jurisdiction over this action, (2) the Court lacks personal jurisdiction over defendant, and (3) plaintiff fails to state a claim. Dkt. No. 16. Plaintiff filed an opposition on February 9, 2015. Dkt. No. 20. Defendant replied on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            **'O'**

| Case No. | 2:14-cv-09003-CAS(VBKx) | Date | March 2, 2015 |
|----------|--------------------------|------|---------------|
| Title | ALEXANDER LEIBMAN v. ALEXANDER SASHA PRUPES, ET AL. | | |

February 17, 2015.  Dkt. No. 21.  After considering the parties' arguments, the Court grants the motion to dismiss for the reasons that follow.[1]

## II.   FACTUAL BACKGROUND

The FAC alleges the following facts, the truth of which the Court presumes for purposes of this motion only.  Plaintiff, an individual, resided in Moscow, Russia from 2004 to November 2013, and has since resided in California.  FAC ¶ 1.  He invented a hair restoration formula, and owns medical clinics throughout the former Soviet Union.  Id.  Defendant was a dentist in the former Soviet Union, and now resides in new Jersey.  Id. ¶ 2.  The two men were formerly good friends.  Id. ¶ 7.

In August 2013, plaintiff hired defendant in connection with a new medical clinic in Kiev, Ukraine.  Id. ¶ 8.  Defendant was paid a salary and reimbursed certain expenses, including room and board.  Id.  Plaintiff agreed to a 75/25 split of proceeds from the Kiev clinic, and agreed to invest up to $200,000 in that clinic.  Id.  In February 2014, geopolitical unrest gripped Ukraine, causing plaintiff's investment to become a "total loss," and putting defendant out of a job.  Id. ¶ 9.  Defendant took up residence in New Jersey in April 2014.  Id. ¶ 10.

In the summer of 2014, plaintiff "considered retaining [defendant] for his services at another location in Moscow," and "negotiated and discussed non-binding terms for the possibility of employing [defendant] at the Moscow facility."  Id. ¶ 11.  Plaintiff also, however, retained Russian legal counsel, who advised against retaining defendant on the grounds that he was not qualified and was not a Russian citizen.  Id. ¶ 12.  On August 21, 2014, plaintiff emailed defendant and stated: "Unfortunately, in the current situation, I cannot risk it and continue our business relationship."  Id. ¶ 13 & Ex. 2.  The email also read, "You can forget about the debt from Kiev."  Id. Ex. 2.

---

[1]The Court declines plaintiff's request that the Court disregard part or all of the instant motion for defense counsel's purported failures to sufficiently meet and confer because, among other reasons, plaintiff has identified no substantial resulting prejudice. The parties are, however, admonished to comply with all Local Rules in future proceedings.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            **'O'**

| Case No. | 2:14-cv-09003-CAS(VBKx) | Date | March 2, 2015 |
| --- | --- | --- | --- |
| Title | ALEXANDER LEIBMAN v. ALEXANDER SASHA PRUPES, ET AL. | | |

On October 1, 2014, defendant sent plaintiff an email. Id. Ex. 3. This email expressed disappointment at being "fired," and opined that the risks plaintiff had previously written about were not "real." Id. The email included the following accounting:

1.   I received $30,000 + $8000 (interest) for three months of work in Moscow.
2.   You deducted from my salary, as we agreed upon . . . about $8000. By the way for some reason you didn't keep me informed about the specific sums and I did not ask, presuming that you kept the books and I can always ask you.
3.   Expense of the flight to Moscow $1000
4.   Expense for food etc. in Moscow $2500 for three months
5.   Expense for obtaining a visa in an American passport $560
6.   Expense for obtaining a visa in a Canadian passport $980
7.   Expenses (inevitable) during the stay in Kiev and Moscow 10 months x $3500 = $35,000.

Id. Defendant wrote, "I understand that you also lost [money], and more than I did. But I lost money having practically eschewed other sources of income . . . . [A]lmost 3 years ago you invited me to a 'business discussion,' offered me a job in Moscow with a salary of $25,000 + commission a month, and then after a couple of months, with clumsy excuses you declared that you changed your mind." Id. Defendant stated, "I believe that I deserve compensation for material and emotional damages." Id.

On October 11, 2014, defendant emailed plaintiff again, stating that he was "surprised by [plaintiff's] silence." Id. ¶ 14 & Ex. 4. Defendant wrote: "Until I receive your answer I do not want to undertake any actions, because there is no going back . . . . If you will not respond, I will take it to mean that this does not concern you and I can undertake whatever I see fit to defend my interests." Id.

That same day, plaintiff responded to defendant by email, stating: "Before you begin implementing your threats, I want you to understand that I do not plan to defend myself passively. Please weigh everything and think about who is in whose debt." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-09003-CAS(VBKx) | Date | March 2, 2015 |
|---|---|---|---|
| Title | ALEXANDER LEIBMAN v. ALEXANDER SASHA PRUPES, ET AL. | | |

Ex. 5.  Plaintiff alleges that these words were "to the effect that [defendant] was making unsupported threats and that [plaintiff] would not pay protection money to him."  Id. ¶ 16.

Plaintiff alleges that on October 12, 2014, and thereafter, defendant "continued to write [plaintiff] long and threatening emails demanding a 'severance package.' "  Id. ¶ 17. Plaintiff contends that on October 14, 2014, defendant "demanded $265,000 from [plaintiff] in a threatening email if [defendant] were not immediately paid."  Id.  This email, as translated and attached to the FAC, states in its entirety:

> I have tried to objectively assess my losses from that time in Florida when you offered me work in Moscow.  As I have already written to you, not only did I not gain, but I lost. I believed in your earnest intent, I risked and I lost money.  Unfortunately I could not manage these risks because everything was dependent upon you personally, except the revolution in Kiev of course.  All that I was left to do for the duration of 30 months was to believe in your word and to conscientiously perform my work.  Having arrived in Moscow, I obviously counted on being able to make up my losses in several years.  Had I been able to work in Moscow for these same 30 months during which I earned nothing with a salary of $10000 per month+ 1%, it comes to about $400,000 income that I would have earned in 5 years.  You understand yourself that it is not a large amount of money for 5 years. But there was nothing left to do, except to "play to get losses back." And this is when you throw me out on the street, as they say, "without severance pay."
>
> This is why I believe that I have a basis and right to seek justice by any means.
>
> About the sum of the compensation I want to be maximally honest as well
>
> 1. I believe that you do not have to be responsible for the losses in Kiev. As far as I recall you spent $108,000 minus approximately $8000 that you took out of my salary. When all is said and done neither you nor I built the barricades or stormed the Rada.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-09003-CAS(VBKx) | Date | March 2, 2015 |
|----------|-------------------------|------|---------------|
| Title | ALEXANDER LEIBMAN v. ALEXANDER SASHA PRUPES, ET AL. | | |

2. You paid me $30,000 for 3 months, plus commissions of about $8000 (which I did not receive)
3. You paid me $5000 for the time when I went to the funeral.

All together, your expenditures come to $135,000

**$400,000 - $135,000 = $265,000 (my compensation)**

This is the trifle we're left with! And if you also subtract travel expenses and take into consideration the discomfort of everyday Russian life etc.  Turns out that I agreed to a salary of $50,000 per year!  Well, what can you do . . .

I want to end this saga fast, painlessly, and to forget it like a nightmare.

Id. Ex. 6 (emphasis in original).

On November 12, 2014, defendant wrote an email in New Jersey to plaintiff in California, in which defendant stated that he had written, but not yet signed, a declaration.  Id. ¶ 18 & Ex. 7.  Defendant stated, "What I am writing to you is not fiction," and warned that "we might be talking about a sum of up to $10,000,000 and imprisonment."  Id. Ex. 7.  Defendant wrote: "Today is the final day of my waiting and I suggest that you make use of it."  Id.  The email also included a postscript relating the gist of a conversation between defendant and an accountant, in which the accountant suggested "processing the compensation (if it comes to that) officially as Severance Pay and to sign a release from further claims," and "split[ting] the payment into two parts" so that "[defendant] will not have grounds to claim any additional compensation and there could be no more 'blackmail' talk whatsoever."  Id.  The FAC does not summarize or attach the contents of the declaration referenced in this email.  But plaintiff alleges that the email "threaten[ed] to report [plaintiff] to the United States Internal Revenue Service for tax-fraud or evasion."  Id. ¶ 18.

Shortly thereafter, plaintiff retained counsel to prosecute this lawsuit "out of fear . . . of [defendant's] demands for money coupled with this overt and covert threat of reporting [plaintiff] to the Internal Revenue Service."  Id. ¶ 19.  Plaintiff denies that he

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-09003-CAS(VBKx) | Date | March 2, 2015 |
|----------|-------------------------|------|---------------|
| Title | ALEXANDER LEIBMAN v. ALEXANDER SASHA PRUPES, ET AL. | | |

ever promised defendant a severance package, or that he ever owed any money to defendant.  Id. ¶ 20.

## III.   LEGAL STANDARDS

### A.     Motion to Dismiss for Lack of Personal Jurisdiction

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the court may properly exercise personal jurisdiction over the defendant.  Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006).  Where, as here, a court decides such a motion without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss.  Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995); Doe v. Unocal Corp., 27 F. Supp. 2d 1174, 1181 (C.D. Cal. 1998), aff'd, 248 F.3d 915 (9th Cir. 2001).  The plaintiff's alleged version of the facts is taken as true for purposes of the motion if not directly controverted.  AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996); Unocal, 27 F. Supp. 2d at 1181.  If the defendant adduces evidence controverting the allegations, however, the plaintiff may not rely on his pleadings, but must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction."  Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986) (quoting Amba Mktg. Servs., Inc. v. Jobar Int'l, Inc., 551 F.2d 784, 787 (9th Cir. 1977)).  Any " 'conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.' "  AT&T, 94 F.3d at 588–89 (quoting WNS, Inc. v. Farrow, 884 F.2d 200, 203 (5th Cir. 1989)).

Generally, personal jurisdiction exists if (1) it is permitted by the forum state's long-arm statute and (2) the "exercise of that jurisdiction does not violate federal due process."  Pebble Beach, 453 F.3d at 1154–55 (citing Fireman's Fund Ins. Co. v. Nat'l Bank of Coops., 103 F.3d 888, 893 (9th Cir. 1996)).  California's long-arm statute is coextensive with federal due process requirements, so that the jurisdictional analyses under state law and federal due process are the same.  Cal. Civ. Proc. Code § 410.10; Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991).  The Fourteenth Amendment's Due Process Clause requires that a defendant have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-09003-CAS(VBKx) | Date | March 2, 2015 |
|----------|-------------------------|------|---------------|
| Title | ALEXANDER LEIBMAN v. ALEXANDER SASHA PRUPES, ET AL. | | |

316 (1945). Depending on the nature of the contacts between the defendant and the forum state, personal jurisdiction is characterized as either general or specific.

A court has general jurisdiction over a nonresident defendant when that defendant's activities within the forum state are "substantial" or "continuous and systematic," even if the cause of action is "unrelated to the defendant's forum activities." Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 446–47 (1952); Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977). The standard for establishing general jurisdiction is "fairly high" and requires that the defendant's contacts be substantial enough to approximate physical presence. Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000).

A court may assert specific jurisdiction over a claim for relief that arises out of a defendant's forum-related activities. Rano v. Sipa Press, Inc., 987 F.2d 580, 588 (9th Cir. 1993). The test for specific personal jurisdiction has three parts:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (citing Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985). In "consider[ing] the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts," a "strong showing on one axis will permit a lesser showing on the other." Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemtisme, 433 F.3d 1199, 1210 (9th Cir. 2006) (en banc). The plaintiff bears the burden of satisfying the first two

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-09003-CAS(VBKx) | Date | March 2, 2015 |
| Title | ALEXANDER LEIBMAN v. ALEXANDER SASHA PRUPES, ET AL. |

prongs, and if either of these prongs is not satisfied, personal jurisdiction is not established. Schwarzenegger, 374 F.3d at 802.

If the plaintiff establishes the first two prongs, then it is the defendant's burden to "present a compelling case" that the third prong, reasonableness, has not been satisfied. Schwarzenegger, 374 F.3d at 802 (quoting Burger King, 471 U.S. at 477). The third prong requires the Court to balance seven factors: (1) the "extent of the defendant's purposeful injection into the forum"; (2) the burdens on defendant from litigating in the forum state; (3) the "extent of conflict with the sovereignty of the defendant's state," (4) the forum state's "interest in adjudicating the dispute"; (5) the "most efficient judicial resolution of the controversy"; (6) the "importance of the forum to the plaintiff's interest in convenient and effective relief"; and (7) the existence of an alternative forum. Ziegler v. Indian River County, 64 F.3d 470, 475 (9th Cir. 1995).

### B.     Motion to Dismiss for Lack of Subject Matter Jurisdiction

A motion to dismiss an action pursuant to Fed. R. Civ. P. 12(b)(1) raises the question of the federal court's subject matter jurisdiction over the action. This defect may exist despite the formal sufficiency of the allegations in the complaint. See T.B. Harms Co. v. Eliscu, 226 F. Supp. 337, 338 (S.D.N.Y. 1964), aff'd 339 F.2d 823 (2d Cir. 1964) (formal allegations must yield to the substance of the claim on a motion to dismiss for lack of subject matter jurisdiction). When considering a Rule 12(b)(1) motion challenging the substance of jurisdictional allegations, the Court is not restricted to the face of the pleadings, but may review any evidence, such as declarations and testimony, to resolve any factual disputes concerning the existence of jurisdiction. See McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).

The burden of proof in a Rule 12(b)(1) motion is on the party asserting jurisdiction. See Sopcak v. N. Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir. 1995); Ass'n of Am. Med. Coll. v. United States, 217 F.3d 770, 778-79 (9th Cir. 2000). If jurisdiction is based on a federal question, the pleader must show that he has alleged a claim under federal law and that the claim is not frivolous. See 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1350, pp. 211, 231 (3d ed. 2004). On the other hand, if jurisdiction is based on diversity of citizenship, the pleader must show real and complete diversity, and also that his asserted claim exceeds the requisite jurisdictional amount of $75,000. See id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-09003-CAS(VBKx) | Date | March 2, 2015 |
| Title | ALEXANDER LEIBMAN v. ALEXANDER SASHA PRUPES, ET AL. | | |

## C.    Motion to Dismiss for Failure to State a Claim

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint.  Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a  cognizable legal theory.' "  Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Polic Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "[F]actual allegations must be enough to raise a right to relief above the speculative level."  Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them.  Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998).  The complaint must be read in the light most favorable to the nonmoving party.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.").  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials).  In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            **'O'**

| Case No. | 2:14-cv-09003-CAS(VBKx) | Date | March 2, 2015 |
|----------|-------------------------|------|---------------|
| Title | ALEXANDER LEIBMAN v. ALEXANDER SASHA PRUPES, ET AL. | | |

that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV.   ANALYSIS

Defendant argues that the FAC should be dismissed for lack of personal and subject matter jurisdiction, and for failure to state a claim. Although a district court must address jurisdictional issues before the merits, a court may address issues of personal jurisdiction before subject matter jurisdiction, where appropriate. See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 578, 584–88 (1999) (holding that "there is no unyielding jurisdictional hierarchy" requiring subject matter jurisdiction to be addressed first). Here, because it presents the more complex issue, the Court first determines that defendant is subject to personal jurisdiction in California. Next, the Court finds that it has federal question jurisdiction to consider plaintiff's federal claims. All of plaintiff's federal claims, however, fail as a matter of law, and are dismissed without leave to amend. And because plaintiff has not met his burden of showing that the Court has diversity jurisdiction, the Court declines to exercise supplemental jurisdiction over plaintiff's state law civil extortion claim, and dismisses that claim without prejudice.

### A.   Personal Jurisdiction

For the reasons stated below, and crediting plaintiff's allegations and submitted evidence, the Court determines that it has specific personal jurisdiction over defendant.

### 1.   General Jurisdiction

Plaintiff does not argue that defendant is subject to general personal jurisdiction in California, and it is clear that he is not. As noted above, for a state to exercise general

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-09003-CAS(VBKx) | Date | March 2, 2015 |
| Title | ALEXANDER LEIBMAN v. ALEXANDER SASHA PRUPES, ET AL. | | |

personal jurisdiction over a defendant, the defendant's contacts be substantial enough to approximate physical presence. <u>Bancroft & Masters</u>, 223 F.3d at 1086. The FAC alleges that defendant resides in New Jersey, and there is no indication in the FAC or otherwise that defendant has any connection to California unrelated to this suit. Additionally, defendant submits an uncontroverted declaration to the effect that he currently lives in New Jersey, has not traveled to California in over fifteen years, does not own property in California, and does not conduct any business in that state. Dkt. No. 16-2 (Pupes Decl.) ¶ 2. The Court does not have general jurisdiction over defendant.

2.      Specific Jurisdiction

As an initial matter, the parties dispute whether defendant knew plaintiff would receive the allegedly extortionate emails in California. Defendant states in a declaration: "At no point during my business dealings with the plaintiff did I ever purposefully contact the plaintiff in California. I usually was not aware of which state, or country, the plaintiff was located in when we were exchanging emails." Pupes Decl. ¶ 2. Plaintiff responds through his own declaration that (1) he had made "specific mention" to defendant of the fact that he resided in Encino, California; (2) he had told defendant "in early or mid-October 2014" that he would "meet with [plaintiff's] attorney in Los Angeles about [defendant's] demands"; and (3) that defendant would have been aware that plaintiff resided in California because plaintiff and defendant have friends and family in common that would have advised defendant of plaintiff's move, and because plaintiff is "fairly certain that [plaintiff] specifically told [defendant that plaintiff] moved to [his] home in Encino, California shortly after [he] left Russia in November 2013." Dkt. No. 20-1 (Liebman Decl.) ¶¶ 2–4. Because, on a motion to dismiss for lack of personal jurisdiction, " 'conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists,' " the Court assumes for purposes of this motion that defendant knew at the time he sent the relevant emails that plaintiff resided in California. <u>See</u> <u>AT&T</u>, 94 F.3d at 588–89 (quoting <u>Farrow</u>, 884 F.2d at 203). With this in mind, the Court applies the three prongs of the specific jurisdiction test.

a.      Purposeful Direction or Availment

Plaintiff argues that defendant is subject to specific jurisdiction in California because, by sending extortionate emails to defendant while defendant resided in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:14-cv-09003-CAS(VBKx) | Date | March 2, 2015 |
|---|---|---|---|
| Title | ALEXANDER LEIBMAN v. ALEXANDER SASHA PRUPES, ET AL. | | |

California, defendant purposefully directed his activities toward California, satisfying the "effects" test that originated in Calder v. Jones, 465 U.S. 783 (1984).  Plaintiff contends that defendant "was expressly aiming the emails to [plaintiff] in his home state of California . . . . and knew he would cause [plaintiff] financial harm there."  Dkt. No. 20 at 14.  The Ninth Circuit has described the "effects" test as follows:

> Calder stands for the proposition that purposeful availment is satisfied even by a defendant "whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state."  Based on these interpretations of Calder, the "effects" test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. . . . [The] "express aiming" requirement . . . . is satisfied when "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state."

Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002) (citations omitted).  It is clear that plaintiff has alleged intentional acts—sending allegedly extortionate emails.  The parties dispute, however, whether the alleged conduct satisfies the "express aiming" prong of the effects test.

The Supreme Court recently discussed Calder in Walden v. Fiore, 134 S. Ct. 1115 (2014).  The Court stressed that, even where an intentional tort is alleged, the "defendant's suit-related conduct must create a substantial connection with the forum State," and this "relationship must arise out of contacts that the 'defendant himself' creates with the forum State."  Id. at 1121–22 (emphasis in original) (quoting Burger King, 471 U.S. at 475).  Furthermore, "the plaintiff cannot be the only link between the defendant and the forum.  Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."  Id. at 1122.  Accordingly, even where the Calder test is invoked, a "forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum," and the specific jurisdiction analysis must focus on the "relationship among the defendant, the forum, and the litigation.' "  Id. at 1123.  The Court emphasized that "[t]he

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:14-cv-09003-CAS(VBKx) | Date | March 2, 2015 |
|----------|--------------------------|------|----------------|
| Title | ALEXANDER LEIBMAN v. ALEXANDER SASHA PRUPES, ET AL. | | |

proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in any meaningful way." Id. at 1125.

The Walden Court overruled a panel decision of the Ninth Circuit. The Ninth Circuit has not yet addressed in a published opinion Walden's effect on its other personal jurisdiction jurisprudence. At least one district within this circuit has read Walden as teaching that "personal jurisdiction does not exist merely because a defendant engages in wrongful conduct targeted at a plaintiff whom the defendant knows to be located in a particular state." Tresona Multimedia LLC v. Legg, No. CV-14-02141-PHX-DGC, 2015 WL 470228, at *3 (D. Ariz. Feb. 4, 2015). Other district courts, however, have continued to cite pre-Walden cases for the proposition that " [t]he 'express aiming' requirement of the effects test is satisfied if 'the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.' " Slayden v. Schulz Boat Co., Inc., No. 3:13-cv-02259-AC, 2015 WL 225731, at *3 (D. Or. Jan. 16, 2015) (quoting Dole Foods, 303 F.3d at 1111).

This Court agrees with the latter group of courts that, in this circuit, the "express aiming" requirement of the effects test remains "satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." Dole Food, 303 F.3d at 111 (quoting Bancroft & Masters, 223 F.3d at 1087). First, "the Supreme Court's opinion in Walden stops well short of overturning the Bancroft line of cases. Rather, the Supreme Court decided Walden narrowly on the facts before it. Until a higher court overrules it, Bancroft remains the law of this Circuit and binds this Court." Exobox Techs. Corp. v. Tsambis, No. 2:14-cv-00501-RFB-VCF, 2015 WL 82886, at *6 (D. Nev. Jan. 6, 2015). Second, Walden is factually distinguishable in important ways. In that case, DEA agents in Georgia seized a plaintiff's assets in an Atlanta airport and drafted a forfeiture warrant that was sent to the United States Attorney's Office in Georgia; the only connection to the forum state of Nevada was that, because the plaintiff happened to reside in Nevada, the agent submitted the affidavit with "knowledge that it would affect persons with a 'significant connection' to Nevada." Walden, 134 S. Ct. at 1119–21. Here, by contrast, the defendant is alleged to have sent tortious emails directly to plaintiff in an attempt to extort money from a known California resident. See Havel v. Honda Motor Europe Ltd., Civil Action No. H-13-1291, 2014 WL 4967229, at *9–10 (S.D. Tex. Sept. 30, 2014) (finding Walden inapplicable where a defendant purposefully contacted individuals in the forum state

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**   'O'

| Case No. | 2:14-cv-09003-CAS(VBKx) | Date | March 2, 2015 |
|---|---|---|---|
| Title | ALEXANDER LEIBMAN v. ALEXANDER SASHA PRUPES, ET AL. | | |

through phone and email, thus targeting forum state residents and property).[2]  Finally, the technological context of this case counsels particular caution in broadly construing Walden because in that case, the Court expressly reserved "questions about virtual contacts," including "intentional torts [] committed via the Internet or other electronic means . . . . for another day."  Walden, 134 S. Ct. at 1125 n.9.

Applying Dole, the Court finds that plaintiff has alleged acts "expressly aimed" at the forum state.  As stated above, the Court credits on this motion plaintiff's evidence that defendant knew, at the time he sent the relevant emails, that plaintiff resided in California.  Plaintiff alleges that defendant, through these emails, attempted to extort large sums of money from plaintiff.  These alleged extortion attempts were directly targeted at plaintiff.  Therefore, plaintiff has alleged that defendant "engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state," satisfying the "express aiming" requirement of the effects test.  Dole Food, 303 F.3d at 111.  For the same reasons, plaintiff has alleged that defendant acted to cause harm that he knew was likely to be suffered in the forum state.  Because each prong of the Calder effects test is met, the Court finds that plaintiff has sufficiently alleged purposeful direction or availment.

---

[2]Another district court has similarly explained that Walden dealt with an extremely attenuated and random connection to the forum state:

> In Walden, the officer was stationed at the Atlanta airport, and seized a bag that could have been headed anywhere.  The officer's purpose was to investigate potential criminal activity occurring in the Atlanta airport, regardless of the origin or destination of any evidence or person he investigated.  The officer did not purposefully target Nevada or any Nevada citizen, nor did he intend for any action taken at the Atlanta airport to have consequences in Nevada.  That consequences occurred in Nevada was, as the Supreme Court stated, random and attenuated to the defendant officer's action in Georgia.

Allianz Global Corporate & Specialty v. Advantage Aviation Techs ., Inc., 32 F. Supp. 3d 849, 855 (E.D. Mich. 2014).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:14-cv-09003-CAS(VBKx) | Date | March 2, 2015 |
|----------|--------------------------|------|----------------|
| Title | ALEXANDER LEIBMAN v. ALEXANDER SASHA PRUPES, ET AL. | | |

The Court is aware that there is case law supporting the position that isolated emails may rarely, if ever, give rise to personal jurisdiction, because they are by their nature not tied to specific physical locations.  In particular, plaintiff cites <u>Rupert v. Bond</u>, No. 12-cv-05292-BLF, 2014 WL 4775375 (N.D. Cal. Sept. 22, 2014).  But that case "by no means [held] that emails can never give rise to purposeful availment of a forum," but rather found that a single email, which merely repeated an allegedly false statement made in litigation concerning out-of state behavior and expressed support for a third party's conduct in that litigation, did not constitute purposeful availment.  <u>Id.</u> at *17, 19.  Here, the emails in question are central to plaintiff's claims for relief.  A Seventh Circuit case cited in <u>Rupert</u> is also distinguishable.  In that case, the court reversed a finding that personal jurisdiction was supported by "the sending of two allegedly misleading emails to a list of subscribers that included Indiana residents and the maintenance of an interactive website."  <u>Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.</u>, 751 F.3d 796, 802 (7th Cir. 2014).  The court reasoned that "[a]s a practical matter, email does not exist in any location at all," and that the "connection between the place where an email is opened and a lawsuit is entirely fortuitous."  <u>Id.</u> at 803.  But the court also found it significant that the emails were sent to a multitude of undifferentiated subscribers, and that "it is exceedingly common in today's world for a company to allow consumers to sign up for an email list."  <u>Id.</u>  Here, where the emails were directed at a single person, whom the defendant knew was a California resident, the Seventh Circuit's concerns about "de facto universal jurisdiction" are not implicated.  <u>See id.</u> at 801–02.  In fact, the <u>Advanced Tactical</u> court stated that "[i]t may be different if there were evidence that a defendant in some way targeted residents of a specific state . . . . in such a case the focus would not be on the users who signed up, but instead on the deliberate actions by the defendant to target or direct itself toward the forum state."  <u>Id.</u> at 803.[3]

---

[3]Also distinguishable are the out-of-circuit district court cases the <u>Rupert</u> court cites for the proposition that "the sending of a single email, or even a series of emails, by itself, does not amount to purposeful availment."  2014 WL 4775375, at *19.  In one, the court stated that "telephone and mail contacts with residents of the forum state can be enough to subject a defendant to jurisdiction," but found that the two emails in question did not amount to purposeful availment of "the privilege of conducting activities with the forum state."  <u>Barrett v. Catacombs Press</u>, 44 F. Supp. 2d 717, 729 (E.D. Pa. 1999).  In the other, the Court found that a defendant's single purchase from a New Jersey website through the eBay website, and an email correspondence related to that purchase, were

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**         **'O'**

| Case No. | 2:14-cv-09003-CAS(VBKx) | Date | March 2, 2015 |
|---|---|---|---|
| Title | ALEXANDER LEIBMAN v. ALEXANDER SASHA PRUPES, ET AL. | | |

Here, it is defendant's alleged actions of sending extortionate emails to a targeted California resident that create minimum contacts with California—not a plaintiff's creation of random or fortuitous contacts by, for example, signing up for an email list, or returning from an out-of-state airport to the forum state. See Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1321–22 (9th Cir. 1998) (finding the effects test satisfied where the defendant used the internet "for the purpose of extorting money from" a plaintiff based in California); Marlyn Nutraceuticals, Inc. v. Improvita Health Prods., 663 F. Supp. 2d 841, 850–51 (D. Ariz. 2009) (finding purposeful direction based on phone calls, emails, and mailings to known Arizona citizen); Cody v. Ward, 954 F. Supp. 43, 45–47 (D. Conn. 1997) (defendant subject to jurisdiction based on telephone calls and emails to known Connecticut resident). Concluding that intentionally tortious emails cannot give rise to personal jurisdiction would insulate from liability a ubiquitous form of communication and "entirely negate the otherwise permissible exercise of jurisdiction over defendants who purposefully directed their activities at a forum state without entering the state." Allianz Global Corporate & Specialty v. Advantage Aviation Techs., Inc., 32 F. Supp. 3d 849, 854–55 (E.D. Mich. 2014). Therefore, accepting plaintiff's version of facts as true for purposes of this motion, the Court finds that plaintiff has met his burden of showing purposeful direction.

b.      Claim Arises Out of Forum-Related Activities

It is clear that plaintiff's claim arises out of defendant's alleged forum-related activities, satisfying the second prong of the Ninth Circuit's specific jurisdiction test. In considering this prong, courts in the Ninth Circuit ask whether, but for the alleged contacts with the forum state, the plaintiff's claims would have arisen. See Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995). A "single forum state contact can support jurisdiction if the cause of action arises out of that particular purposeful contact of the defendant with the forum state." Menken v. Emm, 503 F.3d 1050, 1060 (9th Cir. 2007)

---

insufficient to "invoke[] the benefits and protections of the laws of New Jersey." Machulsky v. Hall, 210 F. Supp. 2d 531, 541–42 (D.N.J. 2002). Additionally, the Court notes that while discussing Calder, these courts spoke in terms of "purposeful availment." "[A]vailment and direction are, in fact, two distinct concepts," and a "purposeful direction analysis . . . is most often used in suits sounding in tort," like this one. Schwarzenegger, 374 F.3d at 802.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:14-cv-09003-CAS(VBKx) | Date | March 2, 2015 |
|----------|--------------------------|------|----------------|
| Title | ALEXANDER LEIBMAN v. ALEXANDER SASHA PRUPES, ET AL. | | |

(internal quotation marks and citation omitted).  Defendant's allegedly tortious emails were directed at a California resident, and form the entire basis of plaintiff's claims.  This prong of the specific jurisdiction test is satisfied.

       c.     Reasonableness

      Because the first two prongs of the specific jurisdiction test are met, the burden shifts to defendant to "present a compelling case" that the third prong, reasonableness, has not been satisfied.  Schwarzenegger, 374 F.3d at 802 (quoting Burger King, 471 U.S. at 477).  Defendant makes no specific argument that exercising personal jurisdiction over him would be unreasonable.  Therefore, defendant has failed to carry his burden of rebutting the reasonableness of exercising personal jurisdiction.  See Evanston Ins. Co. v. W. Cmty. Ins. Co., 13 F. Supp. 3d 1064, 1071–72 (D. Nev. 2014) (finding that a defendant had failed to carry its burden of making out a "compelling case" by including only three sentences in its motion to dismiss).  The Court additionally notes that some of the factors applied in this circuit weigh in factor of reasonableness.  See Ziegler v. Indian River County, 64 F.3d at 475 (listing factors).  "California has a strong interest in providing a forum for its residents and citizens who are tortiously injured."  Dole Food, 303 F.3d at 1115–16.  Plaintiff's interest in convenient and effective relief also weighs in favor of reasonableness, and efficiency weighs slightly in favor of litigating the case in this court because substantive proceedings have already begun and the Court is familiar with California law.  Although defendant faces some burden from litigating in a forum on the opposite side of the country, defendant has already retained Los Angeles-based counsel, and "with the advances in transportation and telecommunications and the increasing interstate practice of law, any burden [of defending a lawsuit in a distant state] is substantially less than in days past."  Menken, 503 F.3d at 1060 (quoting CE Distrib., LLC v. New Sensor Corp., 480 F.3d 1107, 1112 (9th Cir. 2004)).  Accordingly, the Court finds that defendant has not carried his burden of making a "compelling case" that asserting personal jurisdiction over him would be unreasonable.  See Havel, 2014 WL 4967229, at *11 n.14 (exercising jurisdiction over out-of-state defendant alleged to be involved in an intentional tort directed at plaintiffs in Texas did not offend "fair play and substantial justice").  Thus, plaintiff has established a prima facie case of specific personal jurisdiction over defendant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | | |
|---|---|---|---|---|
| **CIVIL MINUTES - GENERAL** | | | | **'O'** |
| Case No. | 2:14-cv-09003-CAS(VBKx) | Date | March 2, 2015 | |
| Title | ALEXANDER LEIBMAN v. ALEXANDER SASHA PRUPES, ET AL. | | | |

**B.    Plaintiffs' Federal Claims**

   1.    The Court Has Federal Question Jurisdiction to Consider Plaintiff's
         Claims.

   The federal district courts "have original jurisdiction of all actions arising under
the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Whether
federal question jurisdiction exists in a given case is governed by the "well-pleaded
complaint rule."  Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).  Under this rule,
the federal question "must be disclosed upon the face of the complaint, unaided by the
answer."  Gully v. First Nat'l Bank in Meridian, 299 U.S. 109, 113 (1936).  In this case,
the Court has federal question jurisdiction because plaintiff alleges a claim under the
federal Fair Debt Collection Practices Act ("FDCPA"), which confers a private right of
action.  See 15 U.S.C. § 1692k.

   2.    Plaintiff's FDCPA Claim Fails.

   The purpose of the FDCPA "is to eliminate abusive debt collection practices by
debt collectors."  Freeman v. ABC Legal Serv., Inc., 827 F. Supp. 2d 1065, 1071 (N.D.
Cal. 2011) (citing 15 U.S.C. § 1692(e)).  To state a claim under this statute, plaintiff
"must show (1) that he is a consumer; (2) that the debt arises out of a transaction entered
into for personal purposes; (3) that the defendant is a debt collector; and (4) that the
defendant violated one of the provisions of the FDCPA."  Id. (citing Creighton v.
Emporia Credit Serv., Inc., 981 F. Supp. 411, 414 (E.D. Va. 1997).

   Plaintiff's claim fails because he does not allege the third element of an FDCPA
claim.  The FDCPA defines "debt collector" as:

         any person who uses any instrumentality of interstate commerce or the
         mails in any business the principal purpose of which is the collection
         of any debts, or who regularly collects or attempts to collect, directly
         or indirectly, debts owed or due or asserted to be owed or due another.
         Notwithstanding the exclusion provided by clause (F) of the last
         sentence of this paragraph, the term includes any creditor who, in the
         process of collecting his own debts, uses any name other than his own

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL                    'O'

| Case No. | 2:14-cv-09003-CAS(VBKx) | Date | March 2, 2015 |
|---|---|---|---|
| Title | ALEXANDER LEIBMAN v. ALEXANDER SASHA PRUPES, ET AL. | | |

which would indicate that a third person is collecting or attempting to collect such debts.

15 U.S.C. § 1692a(6). "To be held directly liable for a violation of the FDCPA, a defendant must—as a threshold requirement—fall within the Act's definition of 'debt collector.' " Oei v. N. Star Capital Acquisitions, LLC, 486 F. Supp. 2d 1089, 1997 (C.D. Cal. 2006) (citing Heintz v. Jenkins, 514 U.S. 291, 294 (1995)). A "debt collector" may be "either (1) 'a person' whose business's 'principal purpose' is the collection of debts (whether on behalf of himself or others); or (2) 'a person' who 'regularly' collects debts on behalf of others (whether or not it is the principal purpose of his business)." Id. "Thus, by its terms, the FDCPA limits its reach to those collecting the debts 'of another' and does not restrict the activities of creditors seeking to collect their own debts." Bleich v. Revenue Maximization Grp., Inc., 239 F. Supp. 2d 262, 264 (E.D.N.Y. 2002)

The FAC is devoid of any allegation that defendant is a "debt collector" within the meaning of the FDCPA. Plaintiff does not allege that defendant is in the business of collecting debts, or does so regularly; all he alleges is that defendant attempted to collect a single debt purportedly owed to defendant in his personal capacity. Such allegations cannot state a claim under the FDCPA. See MacDermid v. Discover Fin. Servs., 488 F.3d 721, 735 (6th Cir. 2007) ("[Defendant] is clearly not a 'debt collector'; rather, it is the very party to whom the debt is due."); Middleton v. Rogers Ltd., Inc., 804 F. Supp. 2d 632, 636 (S.D. Ohio 2011) ("Parties attempting to collect their own debts are not covered by the FDCPA.").

In his opposition, plaintiff argues that defendant falls under the definition of debt collector as a "creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." Dkt. No. 20 at 9. This attempt at salvaging the claim fails for multiple reasons. First, the FAC does not include this allegation. Second, even if those allegations could be added to an amended pleading, the statutory language plaintiff cites is clearly inapplicable to the facts at hand. "A creditor uses a name other than its own when it uses a name that implies that a third party is involved in collecting its debts, 'pretends to be someone else,' or 'uses a pseudonym or alias.' " Maguire v. Citicorp Retail Servs., Inc., 147 F.3d 232, 235 (2d Cir. 1998). Here, there is no allegation that—and the emails attached to the FAC belie any notion that—defendant used another's name to imply that a third party was involved in collecting his debts, pretended to be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-09003-CAS(VBKx) | Date | March 2, 2015 |
| Title | ALEXANDER LEIBMAN v. ALEXANDER SASHA PRUPES, ET AL. | | |

someone else, or used a pseudonym.  Rather, defendant made clear that he was personally attempting to collect a sum defendant believes he is owed, and (crediting plaintiff's allegations) threatened to report plaintiff to the IRS for some wrongdoing if plaintiff did not pay defendant.  Defendant is not alleged to have stated or implied that the IRS, or any other third party, was involved in collecting defendant's debt, or would be.  Accordingly, this claim must be dismissed.

Moreover, it is clear that granting leave to amend this claim would be futile, because—as shown by plaintiff's opposition papers—plaintiff cannot plead facts consistent with those already alleged that would bring defendant within the statutory definition of "debt collector."  As explained above, the statute simply does not cover persons attempting to collect their own debts, who are not alleged to be involved in other substantial debt collection efforts.  Moreover, for the reasons discussed above, plaintiff's "other name" theory raised in his opposition would fail even if those allegations were added to a second amended complaint.  Similarly, added allegations that defendant is a "business consultant" rather than a "dentist," which plaintiff seeks to prove through submitted evidence, would not bring defendant within the FDCPA's definition of "debt collector."[4]  Accordingly, this claim is dismissed without leave to amend.

> 3.    To the Extent Plaintiff Continues to Assert a Federal Claim Under the Criminal Extortion or Blackmail Statutes, That Claim Fails.

The FAC asserts a claim for relief for "blackmail and/or extortion in violation of 18 U.S.C. §§ 873 and 875 and California Penal Code §§ 518 and 523."  FAC ¶ 22.  As the Court has previously pointed out, the federal provisions cited by plaintiff do not confer a civil right of action.  See Chadda v. Mullins, No. 10-4029, 2010 WL 4484622, at *2 (E.D. Pa. Nov. 9, 2010) ("18 U.S.C. § 875 does not authorize a private cause of action."); Stratton v. Massachusetts, No. 06-10829-DPW, 2008 WL 4427203, at *6 (D. Mass. Sept. 26, 2008 (finding no cognizable civil claim based on § 873).  Although plaintiff agreed in his response to the Court's order to show cause "that there is no federal claim under the federal extortion statutes," Dkt. No. 11 at 2, the FAC nevertheless asserts that the Court has federal question jurisdiction pursuant to those statutes, and cites those

---

[4]Because this evidence is unavailing, the Court does not rule on defendant's objection to its admissibility.  See Dkt. No. 22.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-09003-CAS(VBKx) | Date | March 2, 2015 |
|----------|-------------------------|------|---------------|
| Title | ALEXANDER LEIBMAN v. ALEXANDER SASHA PRUPES, ET AL. | | |

statutes in his claim for relief for extortion, FAC ¶¶ A & 22.  To the extent that plaintiff still attempts to base his civil extortion claim on those statutes, the claim is dismissed without leave to amend.

### C.    Plaintiff's State Law Claims

1.    The Court Declines to Exercise Supplemental Jurisdiction in the Absence of an Alternative Basis for Federal Jurisdiction.

A district court may "decline to exercise supplemental jurisdiction" over a state law claims if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(4).  The Supreme Court has advised that, absent another ground for federal subject matter jurisdiction, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (footnote omitted); see also Hodge v. Mountain States Tel. & Tel. Co., 555 F.2d 254, 261 (9th Cir. 1977) ("In light of our disposition of the federal claims, we feel that it is appropriate to remand the state law claims to the district court with instructions to dismiss for want of federal jurisdiction.").

Because this case is in its early stages and, as explained above, plaintiff's federal claims are dismissed without leave to amend, the Court will decline to exercise supplemental jurisdiction over plaintiff's state law civil extortion claim unless plaintiff can show an independent basis for original subject matter jurisdiction over that claim.

2.    Plaintiff Has Not Met His Burden of Showing Diversity Jurisdiction That Would Confer Original Jurisdiction Over the State Law Claim.

Plaintiff argues that diversity jurisdiction provides an independent basis for federal subject matter jurisdiction over this action.  A federal district court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 when the plaintiffs and defendants are completely diverse and the amount in controversy exceeds $75,000.  Matheson v. Progressive Speciality Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003).  Complete diversity exists because the FAC alleges that plaintiff is domiciled in and a resident of California, and the only named defendant is domiciled in and resides in New Jersey.  FAC ¶¶ 1–2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            **'O'**

| Case No. | 2:14-cv-09003-CAS(VBKx) | Date | March 2, 2015 |
|----------|--------------------------|------|----------------|
| Title | ALEXANDER LEIBMAN v. ALEXANDER SASHA PRUPES, ET AL. | | |

Defendant argues, however, that the FAC does not show the requisite amount in controversy. "Where the plaintiff originally files in federal court, 'the amount in controversy is determined from the face of the pleadings.' " Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka, 599 F.3d 1102, 1106 (9th Cir. 2010) (quoting Crum v. Circus Circus Enters., 231 F.3d 1129, 1131 (9th Cir. 2000)); see Ybarra v. Town of Los Altos Hills, 503 F.2d 250, 253 (9th Cir. 1974) (no subject matter jurisdiction where plaintiffs "allege[d] jurisdiction" under statute requiring a certain amount in controversy but "did not allege the amount in controversy in their complaint" or otherwise show amount was met).

In connection with his claim for relief for extortion, plaintiff alleges that he suffered unquantified "general and special damages, including, without limit, pain and suffering including severe emotional distress, as well as attorneys' fees and costs, among other damages to be proven at trial," and punitive damages. FAC ¶¶ 23–24. In connection with his claim under the FDCPA, plaintiff seeks "actual damages, additional damages in the amount of up to $1,000.00, and reasonable attorneys' fees and costs." Id. ¶ 31. Through emails attached to the FAC, plaintiff alleges that defendant demanded money in excess of $75,000, but plaintiff also alleges that he never paid any portion of the demanded sum. See FAC ¶ 16 (stating that plaintiff wrote defendant to the effect that plaintiff "would not pay 'protection money' ").[5] Defendant is correct that the FAC does not clearly allege an amount in controversy greater than $75,000.

In his opposition, plaintiff argues that he has shown the requisite amount in controversy because defendant "admits to owing Plaintiff $135,000 which Defendant

---

[5]The FAC includes a separate claim for "declaratory and injunctive relief." In connection with this "cause of action," plaintiff seeks a declaration that plaintiff has no obligations to and owes no money to defendant, and an injunction barring plaintiff from making contact with or coming within 100 feet of plaintiff and his immediate family. FAC ¶¶ 27–28. But "[d]eclaratory and injunctive and relief are not independent claims; rather they are forms of relief." Santos v. Countrywide Home Loans, No. Civ. 2:09–02642 WBS DAD, 2009 WL 3756337, at *5 (E.D. Cal. Nov. 6, 2009) (citing McDowell v. Watson, 59 Cal. App. 4th 1155, 1159 (1997)). Therefore, if not tied to a substantive claim for relief, a bare request for declaratory relief that could be construed as referring to six-figure debts cannot suffice to show the amount in controversy.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:14-cv-09003-CAS(VBKx) | Date | March 2, 2015 |
|----------|--------------------------|------|----------------|
| Title | ALEXANDER LEIBMAN v. ALEXANDER SASHA PRUPES, ET AL. | | |

deducted from his first extortive demand of $400,000." Dkt. No. 20 at 11. Plaintiff cites paragraph 17 and Exhibit 6 of the FAC. Paragraph 17 alleges that defendant "demanded $265,000 in a threatening email if he were not immediately paid." Exhibit 6, summarized above, sets forth compensation and expenses purportedly paid by plaintiff to defendant. As the Court previously pointed out in its order to show cause, however, plaintiff does not allege that he paid defendant any money, and it is unclear how these dollar amounts are put in controversy by plaintiff's substantive claims for relief. As plaintiff himself alleges, if he prevails on his claim for extortion, he would be entitled to actual damages he can prove, and possibly punitive damages. Plaintiff has not explained how his claims for relief permit the Court to rule on whether or not plaintiff owes defendant $265,000 or any other amount, or whether defendant owes plaintiff $135,000, putting those amounts in controversy. Specifically, plaintiff has not made clear how his claim for extortion—which is unlawful even if the underlying debt is actually owed, Flatley v. Mauro, 39 Cal. 4th 299, 326–27 (2006)—permits the Court to issue a declaration on the validity of the debts alleged herein. Further, the only specific amount of damages plaintiff alleges is the maximum $1,000 of statutory damages under his now-dismissed FDCPA claim. Accordingly, the Court finds that plaintiff has not met his burden of alleging an amount in controversy that satisfies the requirements for diversity jurisdiction. In the absence of established diversity jurisdiction, the Court declines at this time to exercise supplemental jurisdiction over plaintiff's state law claim.

However, it is possible that plaintiff could amend the FAC to allege the requisite amount in controversy. This is particularly so because plaintiff seeks punitive damages in connection with his state law claim for extortion. "[P]unitive damages are part of the amount in controversy in a civil action," and their availability is governed by state law. Gibson v. Chrysler Corp., 261 F.3d 927, 945 (9th Cir. 2001). The availability of punitive damages for California tort claims is governed by California Civil Code section 3294. Hilliard v. A.H. Robins Co., 148 Cal. App. 3d 374, 392 (1983). "Any tort that involves sufficiently reprehensible conduct presents a proper case for punitive damages." 6 Witkin, Summary of California Law, Torts § 1586 (10th ed. 2005). Plaintiff alleges an intentional tort and "malice, oppression, and fraud all within the meaning of" section 3294. FAC ¶ 24. Accordingly, the Court grants the motion to dismiss plaintiff's state law civil extortion claim without prejudice, and with leave to amend. Plaintiff shall have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-09003-CAS(VBKx) | Date | March 2, 2015 |
|----------|-------------------------|------|---------------|
| Title | ALEXANDER LEIBMAN v. ALEXANDER SASHA PRUPES, ET AL. | | |

leave to amend his diversity jurisdiction allegations in order to allege a qualifying amount in controversy if he so chooses and is able to do so in good faith.[6]

## V.    CONCLUSION

In accordance with the foregoing, the Court **GRANTS** the motion to dismiss.  This dismissal is without leave to amend as to plaintiff's Fair Debt Collection Practices Act claim and plaintiff's civil extortion claim to the extent plaintiff attempts to base that claim on federal criminal statutes.  As to plaintiff's state law civil extortion claim, the Court declines to exercise supplemental jurisdiction at this time, and dismisses that claim without prejudice, and with leave to amend to adequately allege an amount in controversy supporting diversity jurisdiction.  Any Second Amended Complaint must be filed by **March 30, 2015**, and may not add any claims for relief or defendants not already pleaded.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|--|----|---|----|
| Initials of Preparer | | CMJ | |

---

[6]Defendant's claim in his reply brief that "plaintiff's FAC makes no mention of the California Penal Code," is incorrect, as the FAC expressly cites "California Penal Code §§ 518 and 523."  FAC ¶ 22.  Those statutes have been read to imply a private right of action.  See Monex Deposit Co. v. Gilliam, 666 F. Supp. 2d 1135, 1136–37 (C.D. Cal. 2009) (finding a claim for civil extortion based on section 523); Mendoza v. Hamzeh, 215 Cal. App. 4th 799, 802, 806–07 (2013) (recognizing a claim for civil extortion under California law).