## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL                     'O'

| Case No. | 2:14-CV-09003-CAS (VBKx) | Date | June 18, 2015 |
|---|---|---|---|
| Title | ALEXANDER LEIBMAN v. ALEXANDER "SASHA" PRUPES | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     **(In Chambers)** COUNTERDEFENDANT'S MOTION TO DISMISS COUNTERCLAIM (Dkt. 29, filed May 12, 2015)

The Court finds this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local Rule 7-15.

## I.     INTRODUCTION

On March 27, 2015, plaintiff and counterdefendant Alexander Leibman ("Leibman") filed the operative Second Amended Complaint (SAC) against defendant and counterclaimant Alexander "Sasha" Prupes ("Prupes"), alleging a state law claim for civil extortion and seeking declaratory and injunctive relief. Dkt. 25. Prupes filed a counterclaim on April 10, 2015, alleging state law claims for (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) promissory estoppel; (4) fraud in the inducement and intentional misrepresentation; (5) wrongful termination in violation of public policy; and (6) violation of California Labor Code § 1102.5. Dkt. 26. On May 12, 2015, Leibman moved to dismiss the counterclaim for lack of subject matter jurisdiction and failure to state a claim. Dkt. 29. Prupes opposed the motion on June 8, 2015, dkt. 33, and Leibman replied on June 15, 2015. Dkt. 36.

## II.     FACTUAL BACKGROUND

The counterclaim alleges the following facts, the truth of which the Court assumes for purposes of this motion.

In the spring of 2012, Leibman offered Prupes a job working in one of Leibman's hair restoration clinics in Moscow, Russia. Countercl. ¶ 8. Prupes was to work six

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            **'O'**

| Case No. | 2:14-CV-09003-CAS (VBKx) | Date | June 18, 2015 |
|---|---|---|---|
| Title | ALEXANDER LEIBMAN v. ALEXANDER "SASHA" PRUPES | | |

months each calendar year for a fixed monthly salary of $25,000, a variable commission equal to three percent of sales, and living accommodations paid for by Leibman. Id. The commissions were estimated to total between $3,000 and $5,000 per month. Id. Prupes accepted the offer and began wrapping up his business affairs in New Jersey in preparation for his move to Russia. Id. He also spent a week working on Leibman's website in order to better market the Moscow clinic. Id. However, Leibman delayed Prupes's start date "based on a variety of excuses," and on December 31, 2012, Leibman rescinded his offer of employment. Id. ¶¶ 9-11.

On the same day he rescinded the original offer, Leibman proposed a new business arrangement whereby he would invest $200,000 for Prupes to open a hair restoration clinic in Kiev, Ukraine. Id. ¶ 12. In exchange, Prupes was to assume responsibility for the clinic's start-up and daily operation. Id. The parties agreed to split all profits equally until Leibman recouped his initial investment, after which Prupes would keep seventy-five percent of the profits and Leibman the remaining twenty-five percent. Id. Leibman agreed to pay Prupes a monthly salary of $5,000 to $10,000 in addition to reimbursements for living and business expenses. Id.

Over the course of the next several months, the parties communicated often and began implementing their plan for the Kiev clinic. Id. ¶ 13. Leibman also supplied the first $10,000 of the investment, which Prupes used to pay for supplies and a flight to Moscow in April 2013. Id. Prupes met with Leibman and his associates in Moscow, and thereafter moved to Kiev to open the clinic. Id.

While in Kiev, Prupes received notice that Leibman had transferred a fifteen percent stake in the clinic to Globodyne Investments, Inc. ("Globodyne"), a Panamanian company, in exchange for $50,000 per month in royalty payments. Id. ¶ 14. Prupes expressed his concerns about the legality of this arrangement, only to be told by Leibman that Globodyne was his company and that Prupes should not worry about it, as Leibman would "deal with it." Id. Prupes accepted this explanation and continued work on the Kiev clinic. Id. ¶ 15.

In October 2013, geopolitical unrest befell Ukraine, causing the local currency to drop in value and the Kiev clinic to fail. Id. ¶ 16. As of February 2014, Leibman had invested $108,000 of the agreed-upon $200,000. Id. However, although he had

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:14-CV-09003-CAS (VBKx) | Date | June 18, 2015 |
|---|---|---|---|
| Title | ALEXANDER LEIBMAN v. ALEXANDER "SASHA" PRUPES | | |

occasionally reimbursed Prupes for business expenses, Leibman had not paid Prupes any salary. Id. ¶ 15.

In February 2014, following the failure of the Kiev clinic, Leibman again offered Prupes the opportunity to manage Leibman's clinic in Moscow. Id. ¶ 17. This time, Leibman proposed a monthly salary of $10,000, commissions estimated at about $3,000,[1] a rent-free apartment, and a private driver. Id. The parties agreed that this was a "permanent" job offer. Id. In the interest of starting fresh, Prupes allowed Leibman to withhold commission payments until Leibman had recouped $54,000, or half of the $108,000 investment Leibman had lost on the Kiev clinic. Id. In April 2014, Prupes left Kiev and moved to Moscow, where he met with Leibman and Leibman's attorney. Id. ¶ 18. Leibman's attorney informed Prupes of the steps to be taken to ensure a legal right to work in Russia, such as obtaining a Russian tax identification number, all of which Prupes did at his own expense. Id. Leibman's attorney also assured Prupes that there would be no legal barriers to acquiring the requisite authorization to work in the country. Id.

For the next three months, Prupes managed the Moscow clinic in accordance with the terms of the agreement. Id. ¶ 19. He was paid $30,000 in salary, although Leibman retained an additional $8,000 due in commissions, as the parties agreed, for recoupment of losses in connection with the Kiev clinic. Id. During Prupes's time at the Moscow clinic, Leibman repeatedly insisted that Prupes encourage customers to pay in cash, since doing so lowered Leibman's tax bill. Id. Prupes expressed his discomfort and disapproval of this practice on several occasions. Id.

Prupes returned to the United States to renew his visa in July 2014. Id. ¶ 20. However, just before Prupes went back to Moscow in August 2014, Leibman informed Prupes that Prupes was not authorized to work in Russia. Id. ¶ 21. Prupes regards that explanation as false, and merely an excuse by which to avoid any further scrutiny of Leibman's tactics, including his possible under-reporting of income and the use of Globodyne as a "shell" company for unlawful transactions, both of which Prupes had previously questioned. Id.

---

[1] The counterclaim is unclear as to the time period covered by this estimate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-CV-09003-CAS (VBKx) | Date | June 18, 2015 |
|----------|--------------------------|------|---------------|
| Title | ALEXANDER LEIBMAN v. ALEXANDER "SASHA" PRUPES | | |

Prupes alleges that he incurred damages in reliance on Leibman's promises, including forgoing other job opportunities during the two years in which he dealt with Leibman. Id. ¶ 22. Prupes also claims that he is owed money under the parties' oral contract for unpaid salary and other expenses. Id.

## III.   LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. While a complaint "does not require detailed factual allegations, [] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In considering a such a motion, a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). The allegations must be read in the light most favorable to the nonmoving party. Shwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." Iqbal, 556 U.S. at 679. Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

The Court cannot consider material outside the pleadings unless it converts the motion to dismiss into a motion for summary judgment. Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996). However, a court may take judicial notice of exhibits submitted with or alleged in the counterclaim whose authenticity is not contested, as well as matters of public record. Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend should be freely granted. Fed. R. Civ. P. 15(a); Foman v. Davis, 371 U.S. 178, 182 (1962). Nevertheless, leave may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-CV-09003-CAS (VBKx) | Date | June 18, 2015 |
|---|---|---|---|
| Title | ALEXANDER LEIBMAN v. ALEXANDER "SASHA" PRUPES | | |

could not possibly cure the deficiency."  Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

Leibman argues that (1) all six claims for relief fail because Leibman was not Prupes's employer; (2) the applicable statute of limitations bars the first, second, and third claims for breach of contract, breach of the covenant of good faith and fair dealing, and promissory estoppel; (3) the first claim for breach of contract is unenforceable as per the statute of frauds; and (4) all six of Prupes's claims must be dismissed based on the presumption against extraterritoriality. Alternatively, Leibman requests an order requiring Prupes to provide a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).

## IV.    DISCUSSION

### A.    Leibman's Subject Matter Jurisdiction Argument

On a motion brought under Federal Rule of Civil Procedure 12(b)(1), the complaining party bears the burden of establishing the Court's subject matter jurisdiction. Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir.1996).  A federal court is presumed to lack such jurisdiction unless the contrary affirmatively appears.  Gen. Atomic Co. v. United Nuclear Corp., 655 F.2d 968-69 (9th Cir. 1981).

Leibman argues that this Court lacks jurisdiction over Prupes's counterclaims because the underlying conduct occurred entirely outside the United States, and thus, the presumption against extraterritoriality bars their prosecution in this Court.  Mot. at 4-11. Although Leibman presents this argument as a challenge to the Court's subject matter jurisdiction under Rule 12(b)(1), the question is more properly framed as one challenging the sufficiency of Prupes's allegations under Rule 12(b)(6).  To ask what conduct a statute reaches is to ask what conduct it prohibits—a merits question—where by contrast, "subject matter jurisdiction . . . refers to a tribunal's power to hear a case."  Morrison v. Nat'l Australia Bank, 561 U.S. 247, 253-54 (2010) (internal quotations and citations omitted) (explaining the error many courts make in deciding extraterritoriality questions under Rule 12(b)(1) rather than Rule 12(b)(6)).  Leibman does not dispute that the requirements for diversity jurisdiction are satisfied, 28 U.S.C. § 1332, or that the Court may alternatively exercise supplemental jurisdiction over Prupes's counterclaims.  28

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-CV-09003-CAS (VBKx) | Date | June 18, 2015 |
|----------|--------------------------|------|---------------|
| Title | ALEXANDER LEIBMAN v. ALEXANDER "SASHA" PRUPES | | |

U.S.C. § 1367.  Therefore, this Court has subject matter jurisdiction, and Leibman's extraterritoriality argument is addressed below as arising under Rule 12(b)(6).

### B.    Prupes's Employer

Leibman argues that Prupes's claims must be dismissed because the contracts were entered into with the clinics in Moscow and Kiev rather than with Leibman personally, and as such, Leibman was not Prupes's employer.  While Leibman is correct that an individual supervisor may not be held personally liable for actions taken on behalf of the employer, Miklosy v. Regents of Univ. of Cal., 44 Cal. 4th 876, 900 (2008), Prupes plausibly alleges that Leibman *was* the employer and the contracting party.[2]  Throughout the entire counterclaim, Prupes describes the employment relationship as only between Prupes and Leibman, and repeatedly describes the clinics as Leibman's.  See Countercl. ¶¶ 8, 17.  Taking Prupes's allegations as true, at no point did any other person claim to represent the interests of the clinics or present themselves as having power to control any of the clinics' operations.[3]

Leibman may well be able to show that he was not truly the contracting party or the employer.  But that is properly done on motion for summary judgment.  Viewing the allegations in the light most favorable to the nonmoving party, Shwarz, 234 F.3d at 435, and drawing all reasonable inferences from them, Navarro, 250 F.3d at 732, the Court finds that Prupes has sufficiently alleged that Leibman was his employer and the contracting party.

---

[2] Leibman cites extensively from Cartwright v. Regents of the Univ. of Cal., 2009 WL 2190072 (E.D. Cal. July 22, 2009), for the proposition that there is "no basis . . . to hold Mr. Leibman liable as an employer or a contracting party."  Mot. at 13.  Cartwright, however, merely reaffirmed the principle that an individual who is not an employer may not be held personally liable for wrongful discharge.  Id. at *8.  That is irrelevant where, as here, Prupes alleges that Leibman was the employer.

[3] Indeed, Leibman suggests in his own SAC that he was the contracting party and thus the employer.  See SAC, dkt. 25, ¶ 8 ("Leibman considered retaining Mr. Prupes for his services . . ."); ¶ 10 ("I [Leibman] cannot risk it and continue *our* business relationship.") (emphasis added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL             'O'

| Case No. | 2:14-CV-09003-CAS (VBKx) | Date | June 18, 2015 |
|----------|--------------------------|------|---------------|
| Title | ALEXANDER LEIBMAN v. ALEXANDER "SASHA" PRUPES | | |

### C.   Statute of Limitations

Next, Leibman argues that the first through third claims for breach of contract, breach of the covenant of good faith and fair dealing, and promissory estoppel must fail as they were brought outside of the applicable two-year statute of limitations for oral contracts.  Cal. Civ. Pro. Code § 339.  He posits that the contract was entered into in the spring of 2012, and any "new employment arrangement does not and cannot constitute another 'oral' agreement subsequent to the first."  Mot. at 15.  Thus, Leibman contends, Prupes was put on notice of the breach in the summer of 2012 at the latest, when Leibman rescinded his offer of employment at the Moscow clinic.  Id.  Prupes counters that there were multiple contracts, Countercl. ¶¶ 8, 12, 17, an allegation which the Court must accept as true.  Navarro, 250 F.3d at 732.

To the extent Prupes seeks damages accruing prior to November 20, 2012—two years before the filing of the original complaint in this case—they are barred absent some basis for equitable tolling or estoppel.[4]  Jones v. Mortimer, 28 Cal. 2d 627, 633 (1946) ("The statute of limitations is not available to plaintiff as to defendants' counterclaim if the period has not run on it at the time of commencement of plaintiff's action even though it has run when the counterclaim is pleaded.").  However, Prupes's counterclaim only concerns the last of three alleged contracts, which he clearly alleges was breached in July 2014.  Countercl. ¶¶ 21, 22, 24, 25, 29, 32, 33.  "In a suit to enforce an oral agreement, the statute of limitations in section 339(1) begins to run when the oral contract is repudiated."  Parker v. Walker, 5 Cal. App. 4th 1173, 1190 (1992).  Thus, Prupes's first through third claims, insofar as they are based on the July 2014 breach of the last contract, are timely.

---

[4] At one point, Prupes claims that he was forced to "eschew[] other job opportunities during the over two years that he relied on Leibman's promises." Countercl. ¶ 22.  Prupes may not properly collect any damages for eschewed job opportunities prior to November 20, 2012, to the extent recovery is based on his first through third causes of action.  Jones v. Mortimer, 28 Cal. 2d 627, 633 (1946).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:14-CV-09003-CAS (VBKx) | Date | June 18, 2015 |
|----------|--------------------------|------|---------------|
| Title | ALEXANDER LEIBMAN v. ALEXANDER "SASHA" PRUPES | | |

### D.     Statute of Frauds

California's Statute of Frauds provides that "[a]n agreement that by its terms is not to be performed within a year from the making thereof" is invalid unless memorialized in writing. Cal. Civ. Code § 1624(a)(1). Leibman contends that Section 1624 bars Prupes's breach of contract claim. As support, he points to Prupes's allegations that the contract was for a "permanent" job of "indefinite duration" in the Moscow clinic. Countercl. ¶¶ 17, 24. This, Leibman argues, necessarily shows that the employment was contemplated to last more than one year.

Leibman's argument misses the mark. First, the Ninth Circuit has plainly stated that, under California law, "an oral contract for 'permanent employment' or of other indefinite duration does not come within the Statute of Frauds." Fibreboard Products, Inc. v. Townsend, 202 F.2d 180, 183 (9th Cir. 1953). Second, Section 1624(a)(1) "applies only to those contracts which, by their terms, *cannot possibly be performed within one year*." White Lighting Co. v. Wolfson, 68 Cal. 2d 336, 343 (1968) (emphasis added). Accordingly, "if by its terms performance of a contract is possible within one year, the contract does not fall within the statute even though it is probable that it will extend beyond one year." Plumlee v. Poag, 150 Cal. App. 3d 541, 548-49 (1984). The employment contract at issue in this case did not expressly preclude performance within one year. Finally, when an alleged oral contract may be terminated at will by either party, "it can, under its terms, be performed within one year." Wolfson, 68 Cal. 2d at 344. At the time Prupes's "employment relationship with [Leibman] was terminated, [Prupes] had completely performed; [Leibman's] performance consisted of nothing more than compensating [Prupes]." Id. at 350.

Leibman's reliance on Ruinello v. Murray, 36 Cal. 2d 687 (1951), is misplaced. While Ruinello held that the defendant may rely on the Statute of Frauds to defend against an alleged breach of an employment contract, the oral agreement at issue in that case "admittedly [was] not to be performed within one year." Id. at 689. To the extent that Leibman claims "permanent" should be read as "lifetime" rather than as a term of art used to distinguish it from "temporary" employment, Mot. at 16, that interpretation is not supported by the language in the counterclaim or by the law. See Townsend, 202 F.2d at 183. At no point does Prupes refer to the management position as a lifetime position, nor is his claim for breach of contract premised on the notion that he is somehow entitled to damages arising during the period after his termination. See Countercl. ¶ 22 (listing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-CV-09003-CAS (VBKx) | Date | June 18, 2015 |
|---|---|---|---|
| Title | ALEXANDER LEIBMAN v. ALEXANDER "SASHA" PRUPES | | |

damages only in reference to the period before termination).  Therefore, Prupes's breach of contract claim is not barred by the Statute of Frauds.

### E.    Extraterritoriality

It is "a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." Morrison, 561 U.S. at 255 (internal quotations omitted); see also Foley Bros. v. Filardo, 336 U.S. 281, 285 (1949).  While the presumption against extraterritoriality is merely a canon of construction rather than a limit on congressional power, it nonetheless applies in all cases so that the Legislature may have a "stable background against which . . . [to] legislate with predictable effects." Morrison, 561 U.S. at 261.  California courts have adopted the same presumption with respect to state law. See Sullivan v. Oracle Corp., 51 Cal.4th 1191, 1207 (2011).

As stated above, Leibman argues that since the oral contract at issue was formed and provided for services to be performed outside the United States, the presumption against extraterritoriality commands dismissal of Prupes's counterclaims.[5]  In other words, Leibman contends that because Prupes was employed in Russia and Ukraine, he may not bring suit in the United States and under California law for claims related to that employment.  The Court finds that although the presumption may apply, Prupes's proposed application of California law would not "operate impermissibly with respect to occurrences outside the state." Id.

### 1.    Common Law Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Promissory Estoppel, Fraud in the Inducement, and Wrongful Termination

As a preliminary matter, Leibman has not proffered any authority supporting the proposition that the presumption against extraterritoriality applies to common law claims. See, e.g., Foley, 336 U.S. at 285 (applying presumption to a statute); Blazevska v.

---

[5] Leibman's Request for Judicial Notice, dkt. 36-1, is **GRANTED**.  Fed. R. Evid. 201; Lee, 250 F.3d at 689.  The Court notes that, as per Prupes's declaration, dkt. 36-2, the contract at issue was entered into overseas.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-CV-09003-CAS (VBKx) | Date | June 18, 2015 |

| Title | ALEXANDER LEIBMAN v. ALEXANDER "SASHA" PRUPES |

Raytheon Aircraft Co., 522 F.3d 948, 952 (9th Cir. 2008) (same); Loving v. Princess Cruise Lines, Ltd., 2010 A.M.C. 2533, 2544-47 (C.D. Cal. Mar. 5, 2009) (same).  Indeed, the presumption is limited to statutes by its terms.  Morrison, 561 U.S. at 255 (defining the principle in reference to "*legislation of Congress*") (emphasis added).  All of Prupes's claims, save for the sixth for violation of California Labor Code Section 1102.5, arise under the common law.

Nonetheless, even assuming *arguendo* that the presumption applies to common law claims, Leibman's argument still fails.  See Sullivan, 51 Cal. 4th at 1207 (having concluded that the presumption against extraterritoriality applies, the Court "proceed[s] to consider whether plaintiffs' proposed application of the [law] would cause it to operate, impermissibly, with respect to occurrences outside the state").  Under California law, the relevant inquiry for whether a state law is being applied extraterritorially is not the location of employment or where the contract was formed, but rather whether "the conduct *which gives rise to liability* . . . occurs in California."  Diamond Multimedia Sys., Inc. v. Superior Court, 19 Cal. 4th 1036, 1059 (1999) (emphasis added); see also Aalmuhammed v. Lee, 202 F.3d 1227, 1238 (9th Cir. 2000) (reversing dismissal based on extraterritoriality because at least one party may have done work "by fax, phone, and email from California"); In re iPhone 4S Consumer Litig., 2013 WL 3829653, at *4 (N.D. Cal. July 23, 2013) (noting that the presumption against extraterritoriality does not prohibit claims brought by out-of-state plaintiffs when the defendant's "critical decisions" which gave rise to the suit took place in California); Wershba v. Apple Computer, Inc., 91 Cal. App. 4th 224, 241 (2001) (upholding certification of a nationwide class for violation of California law because the defendant's "core decision" giving rise to the lawsuit was made within the state).  In this case, although the contract was entered into in Russia or Ukraine, the actions which gave rise to liability—that is, the alleged breach—occurred in California.  By Leibman's own admission, he was a California resident managing his business from within the state at the time of Prupes's termination, and his emails to Prupes originated in California.  See Leibman Decl., Dkt. 20-1, ¶ 2.[6]  Put another way, the alleged "core decision" to wrongfully terminate Prupes

---

[6] The Court takes judicial notice of Leibman's declaration submitted as part of his opposition to Prupes's motion to dismiss, which the Court granted in part on March 20, 2015.  Dkt. 24.  Judicial notice is proper as the declaration is a matter of public record and its authenticity is not questioned.  See Fed. R. Evid. 201; Lee, 250 F.3d at 689.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**        **'O'**

| Case No. | 2:14-CV-09003-CAS (VBKx) | Date | June 18, 2015 |
| --- | --- | --- | --- |
| Title | ALEXANDER LEIBMAN v. ALEXANDER "SASHA" PRUPES | | |

and breach the contract was made in California. <u>Wershba</u>, 91 Cal. App. 4th at 241. Moreover, "California has a clear and substantial interest preventing fraudulent practices in this state and a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices, and for that reason has a legitimate interest in extending state-created remedies to out-of-state parties harmed by wrongful conduct occurring in California." <u>Norwest Mortg., Inc. v. Superior Court</u>, 72 Cal. App. 4th 214, 224 (1999). Therefore, Prupes's common law claims do not constitute improper extraterritorial application of California law.

### 2.    California Labor Code Section 1102.5

California Labor Code Section 1102.5(b) provides in relevant part: "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency. . ."  None of the statutory language indicates that it was intended to apply extraterritorially, and as such, "the presumption against extraterritoriality applies to [Section 1102.5] in full force." <u>Sullivan</u>, 51 Cal. 4th at 1207.

However, as discussed above in relation to Prupes's common law claims, the issue is whether "the conduct which gives rise to liability . . . occurs in California." <u>Diamond</u>, 19 Cal. 4th at 1059.  Again, the alleged decision to retaliate against Prupes for expressing "disapproval on multiple occasions of Leibman's questionable business practices," Countercl. ¶ 48, occurred in California. <u>See</u> Leibman Decl., Dkt. 20-1, ¶ 2.  Thus, Prupes's "proposed application of [Section 1102.5] would [not] cause it to operate, impermissibly, with respect to occurrences outside the state." <u>Sullivan</u>, 51 Cal. 4th at 1207.  Prupes's statutory claim is not an improper extraterritorial application of California law.

### F.    Motion for a More Definite Statement

Finally, Leibman requests that Prupes be ordered to provide a more definite statement in accordance with Federal Rule of Civil Procedure 12(e) on the grounds that the counterclaim is "not intelligible." Mot. at 17.  Rule 12(e) provides that "[i]f a pleading . . . is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-CV-09003-CAS (VBKx) | Date | June 18, 2015 |
|----------|--------------------------|------|---------------|
| Title | ALEXANDER LEIBMAN v. ALEXANDER "SASHA" PRUPES | | |

interposing a responsive pleading."  Such motions are usually denied given the liberal pleading requirements of the Federal Rules, although they are more likely to be granted "where the complaint is so general that ambiguity arises in determining the nature of the claim or the parties against whom it is being made."  Sagan v. Apple Computer, Inc., 874 F. Supp. 1072, 1077 (C.D. Cal. 1994).

While the counterclaim in this case is "not always a model of clarity," Bureerong v. Uvawas, 922 F. Supp. 1450, 1462 (C.D. Cal. 1996), Leibman is not "literally [unable to] frame a responsive pleading."  Hubbs v. Cnty. of San Bernardino, 538 F. Supp. 2d 1254, 1262 (C.D. Cal. 2008) (internal quotations omitted).  In fact, he filed a cogent motion to dismiss that addressed each of Prupes's allegations in turn.  See id. (denying a motion for a more definite statement because "defendants' motion to dismiss amply demonstrates that defendants do understand the issues presented by the First Amended Complaint").  Accordingly, the Court finds no need for a more definite statement.

## V.     CONCLUSION

For the foregoing reasons, Leibman's motion to dismiss is **DENIED**.  Leibman is directed to file an answer to the counterclaim by **July 3, 2015**.

**IT IS SO ORDERED.**

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |