Joseph M. Kar, Esq. (SBN 207414)
**LAW OFFICE OF JOSEPH M. KAR, PC**
15250 Ventura Blvd., Suite 1220
Sherman Oaks, CA 91403
Tel: (818) 501-6930
Fax: (818) 501-6935

Attorney for Plaintiff and Counter-Defendant, ALEXANDER LEIBMAN, an individual

**UNITED STATES DISTRICT COURT**

**STATE OF CALIFORNIA - CENTRAL DISTRICT**

**WESTERN DIVISION**

| | |
|---|---|
| ALEXANDER LEIBMAN, an individual,<br><br>**Plaintiffs,**<br><br>vs.<br><br>ALEXANDER "SASHA" PRUPES, AND DOES 1 through 10, inclusive,<br><br>**Defendants.** | **Case No.: CV 14-9003-CAS (VBKx)**<br><br>[Assigned for all purposes including trial to Hon. Christina A. Synder in Room 5]<br><br>**NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT AND/OR SUMMARY JUDGMENT AS TO THE COUNTER CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>DATE: November 2, 2015<br>TIME: 10:00 am<br>CTRM: 5 |
| AND COUNTERCLAIM | [TRIAL DATE: June 16, 2016] |

**TO THE HONORABLE COURT, ALL INTERESTED PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that **PLAINTIFF AND COUNTER-DEFENDANT,** ALEXANDER LEIBMAN (hereinafter, "Leibman"), hereby moves this Court for an order granting partial summary judgment and/or summary judgment, on November 2, 2015 at 10:00 am in the above-entitled Court, located at 312 South Spring Street, Los Angeles, CA 90012, Courtroom 5.

This motion is made pursuant to Rule 56 of the Federal Rules of Civil Procedure and to the extent that might be application, California Code of Civil Procedure § 437c, and this motion shall address only the counterclaims filed by counter-complainant, Alexander "Sasha" Prupes. All the counterclaims against Mr. Leibman are subject to the presumption against extraterritoriality, including all alleged torts, which requires a bar, or for this Court to abstain or otherwise dismiss the counterclaim as a matter of law.

Additionally, relative to the claims that survived Counter-Defendants' motion to dismiss under F.R.C.P. § 12 (b)(6), there is no and can be no truthful allegations of facts that Mr. Leibman had hired or fired Mr. Prupes and it is in fact only true that "INTER-SERVICE," a Russian limited liability company employed and terminated Mr. Prupes at all times, --not Mr. Leibman.

Importantly, too, Mr. Prupes cannot establish that he was terminated without good cause, since his termination was premised upon his lack of legal authority to work in Russia. Having had good cause, Mr. Prupes' employer, Inter-Select LLC, had no choice but to terminate his recruitment or suffer sanctions and penalties or worse from Russian authorities.

This motion is based upon the notice, memorandum of points and authorities filed concurrently herewith, the proposed statement of uncontroverted facts and conclusions of law, the pleadings previously filed in this action, any request for judicial notice (if any so filed), and any oral argument this honorable Court so permits at the hearing on this motion.

This motion is made 10 days following conference with counsel pursuant to Local Rule 7-3 which took place on or before August 20, 2015.

Dated: September 28, 2015

Respectfully Submitted,
**LAW OFFICE OF JOSEPH M. KAR, PC**

By: ______________________
Joseph M. Kar
Attorney for Plaintiff and Counter-defendant,
ALEXANDER LEIBMAN

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES 5

I. INTRODUCTION. 5

II. LAW GOVERNING SUMMARY DISPOSITION. 6

LEGAL ARGUMENT 7

III. THE PRESUMPTION AGAINST EXTRATERRITORIALITY APPLIES TO THE CHARACTER OF THE ACT AND IS *A RULE OF AUTHORITY.* 7

A. JUDGMENT ON THE FIFTH AND SIXTH COUNTERCLAIMS FOR VIOLATION OF LABOR CODE SECTION 1102.5 AND WRONGFUL TERMINATION AGAINST PUBLIC POLICY MUST BE ENTERED IN MR. LEIBMAN'S FAVOR. 9

B. EVERYONE OF MR. PRUPES' STATE LAW CLAIMS SEEKING STATE LAW REMEDIES ARE BARRED BY THE PRESUMPTION. 12

V. MR. PRUPES' CHOICE OF LAW FOR HIS FOREIGN CLAIMS IN THE U.S. RESULTS IN A DEPRIVATION OF RIGHTS TO MR. LEIBMAN.

VI. CONCLUSION. 18

# TABLE OF AUTHORITIES

***Statutes and Laws***


| | |
|---|---|
| F.R.C.P. § 56 | **6-7** |
| Labor Code § 1102.5 | **9 ,13** |
| Labor Code § 2922 | **13** |
| California Civil Code §§ 3281 et seq. | **13** |


**Case Law**


| | |
|---|---|
| Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) | **6-7** |
| Celotex Corp. v. Catrett, 477 U.S. 317 (1986) | **6** |
| Taylor v. List, 880 F. 2d 1040 (9th Cir. 1989) | **7** |
| KRL v. Moore, 384 F. 3d 1105 (9th Cir. 2004) | **7** |
| Foley Bros., Inc. v. Filardo, 336 U.S. 281 (1949) | **7** |
| Kiobel v. Royal Dutch Petroleum, 569 U.S. ___, 133 S. Ct. 1659 (2013) | **7** |
| American Banana Co. v United Fruit Co., 213 U.S. 347 (1909) | **7-8** |
| EEOC v. Arabian American Oil Co., 499 U.S. 244 (1991) | **8** |
| Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428 (1989) | **8** |
| New York Cent. R.R. v. Chisholm, 268 U.S. 29, 31 (1925) | **9** |
| Norwest Mortgage, Inc. v. Superior Court, 72 Cal. App. 4th 214 (Cal.App.4 Dist., 1999) | **9-11** |
| Diamond Multimedia Systems, Inc. v. Superior Court, 19 Cal.4th 1036 (Cal., 1999) | **11-12** |
| People ex rel. DuFauchard v. U.S. Financial Management,..., et al., 169 Cal.4th 1502 (Cal., 2009) | **11** |
| North Alaska Salmon Co. v. Pillsbury, 174 Cal. 1 (Cal., 1916) | **11-12** |
| Sullivan v. Oracle Corp., 51 Cal.4th 1191 (Cal., 2011) | **11-13** |
| Foley v. Interactive Data Corp., 47 Cal.3d 654 (Cal., 1988) | **14** |
| Shapiro v. Wells Fargo Realty Advisors, 152 Cal.App.3d 467 (Cal.App., 1984) | **14** |
| Cartwright v. Regents of the Univ. of Cal., 2009 U.S. Dist. LEXIS 62953 (E.D. Cal. 2009) | **15** |
| Phillips Petroleum Co. v. Shutts, 472 U.S. 797 (1985) | **16-17** |
| Red v. Kraft Foods, Inc., 2011 U.S. Dist. LEXIS 116965 (C.D. Cal. 2011) | **17** |

## MEMORANDUM OF POINTS AND AUTHORITIES

**I. INTRODUCTION.**

The counterclaims are replete with claims that are not subject to U.S. or California laws, nor is Mr. Prupes a California resident entitled to protection under California labor laws. Attached hereto as **Exhibit 1** is a true and correct copy of the Counterclaims filed by Mr. Prupes. **Solidly, Mr. Leibman was in Russia on August 14 until September 15, 2014, when the decision was made and when the termination letter was forwarded to Mr. Prupes, which is proven herein by his declaration and corresponding passport entries and exit stamps.** Leibman Decl., ¶ 10; Exhibit 1 thereto. Mr. Leibman authenticates his passport entry and exit marks in/out of Russia. Ibid.

Mr. Prupes also confirms that the alleged promise of employment, fraud, oral contract, and other claims arose outside of the United States. Attached hereto as **Exhibit 2** is a true and correct copy of the declaration of Alexander "Sasha" Prupes dated January 30, 2015. As a result, the presumption against extraterritoriality requires abstention or dismissal, as a matter of law.

Importantly, the Muscovite medical clinic had and has no connection to the U.S. or California and only serviced people in Russia. It had and has no contact or relationship to the United States or California. Chernov ¶¶ 2-4. Thus all of the counterclaims are subject to entry of summary judgment as explained below.

Next, after the motion to dismiss the counterclaims, this Court found that Mr. Prupes could only make oral breach of contract claims predating the filing of the complaint, November 20, *2014*, by two years. Attached hereto as **Exhibit 3** is a true and correct copy of the Court's ruling on Mr. Leibman's motion to dismiss the counterclaims, Dkt. No.37, see page 7.

Mr. Prupes' claims rest on his ability to prove he was employed by Mr. Leibman. However, there is no evidence or testimony to establish that Mr. Leibman employed Mr. Prupes or otherwise terminated him from any employment with him. Rather, the termination letter from corporate counsel terminated Mr. Prupes from

employed Inter-Select LLC in Russia for good cause, because he lacked qualifications and was ineligible. Since Mr. Prupes knowingly, and exclusively worked for Inter-Select LLC and not Mr. Leibman, then all of the counterclaims fail as a matter of law.

The choice of law of the United States or California for adjudication of Mr. Prupes' Russian claims and causes of action works to deny Mr. Leibman due process of law. There is simply no connection between Mr. Prupes' claims and the United States or California laws whatsoever, nor does U.S. citizenship of the parties and unrelated contacts to foreign countries confer rights to adjudicate foreign claims domestically.

As a result there is no interest in adjudicating, and it would be fundamentally unfair to adjudicate, Mr. Prupes' Russian claims and causes of action in the United States or California.

The Court should therefore and is respectfully requested to grant this motion and enter judgment against counterclaimant on all six counterclaims raised as a matter of law.

## II. LAW GOVERNING SUMMARY DISPOSITION.

Summary judgment is appropriate if there is no genuine issue as to any material fact or if the moving party is entitled to judgment as a matter of law. *See* F.R.C.P. § 56(a). The moving party bears the initial burden of establishing there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

To defeat the motion for summary judgment, the responding party must present admissible evidence sufficient to establish any of the elements that are essential to the non-moving party's case and for which that party will bear the burden of proof at trial. Id.; Taylor v. List, 880 F. 2d 1040, 1045 (9th Cir. 1989).

The Court may grant summary judgment if the motion and supporting materials, including the facts considered undisputed, show the movant is entitled to summary judgment or partial summary judgment, and if the responding party fails

to properly address the moving party's assertion of fact as required by Rule 56 (c). F.R.C.P. § 56(e).

The responding party cannot point to *mere allegations* or *denials* contained in his answer or pleadings. It is not enough for the *non-moving party* to produce a mere "scintilla" of evidence. Anderson v. Liberty Lobby, Inc., supra, 477 U.S.at 252.

Instead, the responding party must set forth, by affidavit or other admissible evidence, specific facts demonstrating the existence of an actual issue for trial. KRL v. Moore, 384 F. 3d 1105, 1110 (9th Cir. 2004).

## LEGAL ARGUMENT

### III. THE PRESUMPTION AGAINST EXTRATERRITORIALITY APPLIES TO THE CHARACTER OF THE ACT AND IS *A RULE OF AUTHORITY*.

It is important to highlight that the Presumption Against Extraterritoriality is not merely a rule of statutory construction. Claims alleged must be those that an Article III, § 2, court could entertain. That is, the Presumption is supposed to prevent claims that are not related to U.S. or domestic laws in order to satisfy a number of interests including international comity or congressional intent. See, Foley Bros., Inc. v. Filardo, 336 U.S. 281, 285 (1949).

To satisfy the requirements of federal question or diversity jurisdiction is not the same as and would not be enough to confer ***authority*** to adjudicate an extraterritorial claim. The Presumption sticks to all forms of jurisdiction an Article III court might consider, and mandates only domestic affairs be adjudicated. Even, most recently, our Supreme Court took a broad view to bar tort claims raised under the Alien Tort Claims Statute. Kiobel v. Royal Dutch Petroleum, 569 U.S. ___, 133 S. Ct. 1659 (2013).

Justice Oliver Wendell Holmes delivered the modern-day Presumption against Extraterritoriality ("Presumption"), as follows:

> the ***character of an act*** as lawful or unlawful must be determined wholly by the law of the country where the act is done [which] would lead, in case of doubt, to a construction of any statute as intended to be

> confined in its operation and effect to the territorial limits over which the lawmaker has general and legitimate power.

American Banana Co. v United Fruit Co., 213 U.S. 347, 356-357 (1909) (***emphasis*** added); see also, EEOC v. Arabian American Oil Co., 499 U.S. 244, 248 (1991) ["It is a longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears is meant to apply only within the territorial jurisdiction of the United States."]; see also, Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 440-41 (1989), [Foreign Sovereign Immunities Act]

All of the counterclaims in this case seek to enforce rights that are based on events and an alleged oral employment contract admittedly formed, performed and terminated, *completely outside of the United States*. The wrongful termination claims, breach of oral contract and breach of the covenant of good faith, promissory estoppel, and intentional fraud, counterclaims are all based on the same facts and events which alleges an oral contract was formed and breached abroad in 2014.

But, there is nothing whatsoever about the alleged fraud, promises or covenants to, employment of, or alleged oral employment contract with Mr. Prupes that had anything to do with California or the United States, since the contemplated employment and medical services offered were exclusively marketed and performed on Russian citizens in Moscow Russia.

In Foley Bros., supra, "In 1941 petitioners contracted on a cost-plus basis to build certain public works on behalf of the United States in the East and Near East, particularly in Iraq and Iran." Id., 336 U.S. at 283. After that employee filed an overtime claim in state court, he prevailed and the New York Court of Appeal upheld the lower court's judgment applying the overtime laws to an employment and work conducted in foreign countries.

The United States Supreme Court granted certiorari and reversed, in essence, found that the regulation of labor conditions and concerns in a foreign country were matters of concern only for that country and not to the United States Congress.

> The canon of construction which teaches that legislation of Congress, unless a contrary intent appears, is meant to apply only within the

> territorial jurisdiction of the United States, Blackmer v. United States, supra, at 437, is a valid approach whereby unexpressed congressional intent may be ascertained.

Id., 336 U.S. at 285; New York Cent. R.R. v. Chisholm, 268 U.S. 29, 31 (1925) [Federal Employers' Liability Act does not govern in damages action brought on behalf of United States citizen employed by United States railroad injured in Canada].

Hence, the indelible result of the Presumption mandates that trial courts exercise one of the most valiant forms of discipline, which is restraint over processing, proceedings, and claims involving acts whose character have no definite terrestrial nexus.

**A. JUDGMENT ON THE FIFTH AND SIXTH COUNTERCLAIMS FOR VIOLATION OF LABOR CODE SECTION 1102.5 AND WRONGFUL TERMINATION AGAINST PUBLIC POLICY MUST BE ENTERED IN MR. LEIBMAN'S FAVOR.**

There is no dispute that Mr. Prupes is a non-California resident and has not ever worked in California. SSUF# 2-9; Exhibit 3, ¶¶ 2 and 7 (Prupes Decl., 1/30/2014) [¶2, "I have not traveled to California in over 15 years, when I traveled to San Jose it was for leisure purposes only."] The alleged employment was indisputably for a Russian medical clinic in Moscow owned, operated, and managed by Inter-Service LLC. Chernov ¶¶ 1-4, 7-12; Leibman Decl., ¶¶ 7-16.

The counterclaims that survived the motion to dismiss only involve the alleged employment in April 2014 with Mr. Leibman alleged as the sole employer. X/C ¶ 18. Moreover, the sixth counterclaim for violation of Labor Code § 1102.5 alleges that "California Labor Code Section 1102.5 prohibits employers from retaliating against an employee because the employer believes that the employee intends to disclose violation of the law or for refusing to participate in illegal activities." X/C ¶¶ 47.

However, California laws do not apply to non-California residents working abroad. See, Norwest Mortgage, Inc. v. Superior Court, 72 Cal. App. 4th 214, 222

(Cal.App.4 Dist., 1999) ["We ordinarily presume the Legislature did not intend the statutes of this state to have force or operation beyond the boundaries of the state. (North Alaska Salmon Co. v. Pillsbury (1916) 174 Cal. 1, 4 [162 P. 93]; People v. One 1953 Ford Victoria (1957) 48 Cal. 2d 595, 598-599 [311 P.2d 480].) Accordingly, we do not construe a statute as regulating occurrences outside the state unless a contrary intention is clearly expressed or reasonably can be inferred from the language or purpose of the statute."]

In Norwest Mortgage, supra, the California Fourth District Court of Appeal explained how the "presumption against extraterritoriality" worked in California.

> 'the presumption against extraterritoriality is one against an intent to encompass *conduct* occurring in a foreign jurisdiction in the prohibitions and remedies of a domestic statute. [Citations.]" (Diamond, supra, 19 Cal. 4th at p. 1059, fn. 20, *original italics.*) Diamond concluded that cases like North Alaska Salmon Co. v. Pillsbury, supra, 174 Cal. 1 were distinguishable because 'unlike the injury in [North Alaska], the conduct which gives rise to liability under section 25400 occurs in California.' (Diamond, supra, at p. 1059.) The Diamond court emphasized there was no constitutional impediment to permitting non-Californians a right of action under the domestic statute because California has a 'clear and substantial interest in preventing fraudulent practices *in this* state . . . [and] a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices,' and for that reason has a legitimate interest in 'extending state-created remedies to out-of-state parties harmed by wrongful conduct *occurring in* California.' (Id. at pp. 1063-1064, italics added.)
>
> The linchpin of Diamond's analysis is that state statutory remedies may be invoked by out-of-state parties when they are harmed by wrongful conduct occurring in California. However, the facts developed below show the claims of **Category III members are for injuries suffered by non-California residents, caused by conduct occurring outside of California's borders, by defendants whose headquarters and principal places of operations are outside of California.**

Id., supra, 72 Cal.App.4th 214, 224-225 (*italics in original*, **bold added**); Diamond Multimedia Systems, Inc. v. Superior Court, 19 Cal.4th 1036, 1060, FN 20 (Cal., 1999); *see also* People ex rel. DuFauchard v. U.S. Financial Management,..., et al., 169 Cal.4th 1502, 1517-1518 (Cal., 2009); North Alaska Salmon Co. v. Pillsbury, 174 Cal. 1, 7 (Cal., 1916) ["there is strong authority in support of the proposition that [California's] workmen's compensation statutes, in the absence of express declaration that they shall operate extraterritorially, are not to be given such effect."]

In Sullivan, the California Supreme Court was requested to answer state law questions by the Ninth Circuit, in pertinent part, on whether the Presumption against Extraterritoriality applied to state law wage claims against Oracle. Sullivan v. Oracle Corp., 51 Cal.4th 1191, 1207 (Cal., 2011), (certified question at Sullivan v. Oracle Corp., 557 F.3d 979 (9th Cir., 2009)). Conclusively, the California Supreme Court held that *non-residents* working *outside of California* are not entitled to protection under California employment laws governing overtime wages. Id. at 1207-1208. Those working in the state were entitled to Californian remedies.

But, Mr. Prupes is a non-resident that admits that he has never worked for Mr. Leibman in California ever. Exhibit 3 hereto, ¶¶ 2 and 7. The fifth counterclaim for wrongful termination against public policy also alleges violation of the United States and California public policies and laws expressly, which is definitively implausible in light of the fact that California labor codes and policies as well as U.S. policies only apply to work conducted and completed within the state or the United States. X/C ¶ 44.

Rather, the only facts supporting the fifth and sixth counterclaims relate to an employment in Russia for the Muscovite medical clinic. X/C ¶¶ 18-21, 41-49. Thus, Mr. Prupes expressly and impermissibly seeks refuge under U.S. and California law and policy for conduct and work conducted outside of California and the United States, which the character of the acts and work were exclusively formed, performed, and completed in Russia.

Indeed, even accepting Mr. Prupes' allegations as true, his duties as a general manager of a Muscovite medical clinic would only typically and expectedly expose him to Russian citizens on Russian soil, governed exclusively by Russian laws. As a result, the overwhelming authority requires that summary judgment be entered on the fifth and sixth counterclaims against Mr. Prupes and in favor of Mr. Leibman as required by the Presumption.

**B. EVERYONE OF MR. PRUPES' STATE LAW CLAIMS SEEKING STATE LAW REMEDIES ARE BARRED BY THE PRESUMPTION.**

The Presumption is so overwhelmingly strong that Mr. Prupes cannot claim for any recovery under any California state law remedy statutes, which eliminates all of his counterclaims regardless of whether founded upon statute, intentional or other tort, equity, or contract theory. The California Supreme Court has for a long time upheld the application of the Presumption to California's remedy statutes.

In North Alaska Salmon Co. v. Pillsbury, supra, 174 Cal. at 7, the California Supreme Court held that a non-resident was precluded from seeking compensation under the workmen's compensation laws of California for work performed in Alaska. Id. at 3, 7. That Supreme Court ruled that the Presumption did apply to California's remedy statutes. Thereafter, the case was found to be barred for want of jurisdiction to enter judgment in favor of that employee. Id. at 7; Sullivan v. Oracle Corp., supra, 51 Cal.4th at 1207.

The California Supreme Court continued to uphold the application of the Presumption to California's remedies statutes in Diamond Multimedia Systems, Inc. v. Superior Court, supra, 19 Cal.4th at 1059-1060. In footnote 20, that Supreme Court stated:

> The presumption against extraterritoriality is one against an intent to encompass *conduct* occurring in a foreign jurisdiction in the prohibitions and **remedies of a domestic statute**. (See, e.g., Smith v. United States (1993) 507 U.S. 197, 203-204 [113 S. Ct. 1178, 1182-1183, 122 L. Ed. 2d 548] [presumption against extraterritorial application of United States law requires that doubts as to the reach of

> the Federal Tort Claims Act be resolved against its encompassing torts committed in Antarctica]; see also 73 Am.Jur.2d (2d ed. 1974) Statutes, § 359, p. 492 [absent clearly expressed contrary intent the presumption is that statute is intended to have no extraterritorial effect, but to apply only in jurisdiction of state or country enacting it]; Tattis v. Karthans (Miss. 1968) 215 So.2d 685 [words spoken in North Carolina not actionable under Mississippi state statute]; Marmon v. Mustang Aviation, Inc. (Tex. 1968) 430 S.W.2d 182 [Texas wrongful death statute does not provide remedy for death occurring in Colorado accident]; Burns v. Rozen (Fla.Dist.Ct.App. 1967) 201 So.2d 629 [Florida statute regulating method of taking fish applied only to territorial waters of state]; Dur-ite Co. v. Industrial Commission (1946) 394 Ill. 338 [68 N.E.2d 717] [workers' compensation law does not encompass persons employed outside State of Illinois].)

Id. at 1060, fn 20 (italics in original, **bold** and underscoring added).

Here, each one of the counterclaims, one through six, seek remedies under California's remedies laws which is, however, subject to and restricted by the Presumption against Extraterritoriality, including all contract, tort, equitable, and statutory damages under California Civil Code §§ 3281 et seq. or California Labor Code §§ 1102.5 or otherwise.

Accordingly, the Court is respectfully requested to grant summary judgment in favor of Mr. Leibman and against Mr. Prupes on all six counterclaims based on the Presumptions preclusion applying to California and U.S. remedies laws and theories.

**IV. MR. LEIBMAN WAS NEVER MR. PRUPES' EMPLOYER, RATHER MR. PRUPES WAS TERMINATED FOR CAUSE FROM INTER-SERVICE LLC (RUSSIA).**

Mr. Prupes contradictingly alleges that Mr. Leibman was his employer but Mr. Prupes also alleges that he worked for a Moscow clinic that is owned, operated, and managed by Inter-Service LLC. X/C ¶ 18-19, 24; Leibman ¶¶ 3-17. Oppositely, Mr. Leibman establishes that at no time did he promise to hire, hire, or otherwise terminate Mr. Prupes from any employment with or otherwise for him personally at any time. Leibman, ¶¶ 4-9; Chernov, ¶¶ 3-12. Therefore, the allegations that Mr.

Prupes makes, suggesting that Mr. Leibman was his employer while he worked at the Moscow clinic, is refuted with much better evidence establishing sufficiently that Mr. Prupes was only employed by the Russian entity and never by Mr. Leibman.

Messers. Chernov and Leibman also declare that "Inter-Select LLC" was the owner, operator, and managed the Moscow medical clinic, and that Mr. Prupes was being recruited by that entity. Leibman ¶¶ 4-5; Chernov, ¶¶ 3-8. Mr. Prupes knew he was required to submit various documentation and paperwork when he was in Russia to Inter-Service LLC including his passport, visa, and medical training experience and degrees (if any), to qualify for the recruitment and recruitment process. Leibman ¶¶ 6, 9; Chernov ¶¶ 7-11; Cherkashenin, ¶¶ 2-5.

Additionally, Mr. Leibman states that Mr. Prupes never worked for him in any capacity anywhere. Leibman ¶¶ 6-7, 16; Chernov ¶¶ 3-7. The alleged termination that Mr. Prupes complains about in his counterclaims also only involves a termination from Inter-Service LLC and not from Mr. Leibman or anything Mr. Leibman did in the United States or California. Cherkashenin, ¶¶ 5-7 and Exhibits 1 and 2 thereto. Rather, Mr. Prupes was terminated from Inter-Service LLC for cause because he did not qualify and was not eligible for work in Russia. Leibman ¶¶ 12-15 and Exhibits 1-3 thereto; Chernov ¶¶ 8-12 and Exhibit 1 thereto; Cherkashenin, ¶¶ 22-7 and Exhibits 1-2 thereto; California Labor Code § 2922 (terminable at-will); Foley v. Interactive Data Corp., 47 Cal.3d 654, 700 (Cal., 1988); Shapiro v. Wells Fargo Realty Advisors, 152 Cal.App.3d 467, 477 (Cal.App., 1984) (no action unless the plaintiff can establish that dismissal was caused by refusal to perform an illegal act (as in Tameny and Petermann) or because the employer directly violated a statute by dismissing the employee, and courts lack the power to declare public policy in wrongful termination cases without statutory support).

Simply put, Mr. Prupes cannot just "declare" himself to be an employee of an individual while he knows he was working for a foreign corporation in another country, merely to find some way of sneaking-in his extraterrestrial counterclaims.

Nor can he impute liability to a founder of the company as the employer wrongfully terminating him or otherwise causing him damages alleged. Cartwright v. Regents of the Univ. of Cal., 2009 U.S. Dist. LEXIS 62953 (E.D. Cal. 2009). The Cartwright case is instructive.

> Defendant argues that both common sense and California case law preclude a plaintiff from suing an individual for the tort of wrongful discharge in violation of public policy. Plaintiff counters that a footnote in the California Supreme Court's recent decision in Miklosy v. Regents of Univ. of Cal., 44 Cal. 4th 876, 80 Cal. Rptr. 3d 690, 188 P.3d 629 (2008) left open the possibility of suing an individual for wrongful discharge.
>
> Plaintiff's citation to footnote 8 in Miklosy is unpersuasive. The Miklosy Court held that an "action for wrongful discharge can only be asserted against an employer. **An individual who is not an employer cannot commit the tort of wrongful discharge in violation of public policy; he or she can only be the agent by which an employer commits that tort."** 44 Cal. 4th at 900 (emphasis in original). The footnote that Plaintiff cites posits an unlikely hypothetical to show how unlikely it would be that a plaintiff could ever allege a wrongful discharge tort against an individual defendant. Only after observing that in general "a supervisor's action merges with that of the employer," Id. at 901, fn. 8, did the Miklosy Court make the statement upon which Plaintiff exclusively relies: "We could only hold that the supervisor commits an *independent* tort if the supervisor's action were somehow by *itself* injurious, irrespective of the adverse employment action it causes the employer to take, but that is not alleged here." Id. (emphasis in original). **Because the tort of wrongful discharge in violation of public policy can only be asserted against an employer, Defendants' motion to dismiss the Eighth Cause of Action against Defendant Genito will be granted.**

Cartwright v. Regents of the Univ. of Cal., supra, 2009 U.S. Dist. LEXIS 62953 * at 22-24 (**bold** added).

Because Mr. Prupes hinges his counterclaims on one all-important untrue fact, that Mr. Leibman was his employer, this Court has ample authority to grant the summary judgment against Mr. Prupes and in favor of Mr. Leibman. The old adage,

"no good deed goes unpunished," applies here, since all Mr. Leibman did was try to help a friend by recommending him for a job at a company, when his friend asked and when his friend was totally down on his luck. Leibman ¶ 4.

As such, this Court is respectfully requested to grant the motion for summary judgment and/or partial summary judgment on all counterclaims because Mr. Prupes cannot establish and will never be able to truthfully establish that Mr. Leibman was his employer, or otherwise promised him employment; and that Mr. Prupes was terminated for cause in all events.

**V. MR. PRUPES' CHOICE OF LAW FOR HIS FOREIGN CLAIMS IN THE U.S. RESULTS IN A DEPRIVATION OF RIGHTS TO MR. LEIBMAN.**

Mr. Prupes raises only California state law claims for activities and promises, and alleged oral promises and covenants, and equitable and statutory claims without interest to California or the United States. Mr. Leibman's due process rights are violated by the choice of law of California and United States in light of the entirety of Mr. Prupes' facts, transactions and circumstances taking place in Russia or Ukraine. Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 818 (1985) [Under the Due Process Clause, a state must have enough contacts "that choice of its law is neither arbitrary nor fundamentally unfair."]

In Phillip Petroleum, the Supreme Court explained that: "Kansas must have a 'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of Kansas law is not arbitrary or unfair. Allstate, 449 U.S., at 312-313." Id. at 821-822. Emphasized above, no cognizable facts, transactions, dealings, negotiations, promises, or otherwise connects the U.S. or California to the counterclaims asserted by Mr. Prupes.

Rather, Mr. Prupes says he worked as a general manager at a medical clinic in Moscow and that he worked on Russian soil at all times relevant. Moreover, there is no dispute nor could be any dispute that the medical clinic limited its practice to Russia, and only that country, without any contact or dealings with California or

Russia. Indeed, Mr. Prupes does not deny that he has not been in California for over 15 years according to his declaration to this Court dtd January 30, 2015, Exhibit 3 to Kar Decl.

Thus, Mr. Prupes cannot show that California has any interest in the claims he presents involving a foreign employment and promises related to an alleged breach, fraud, etc. in Russia. Mr. Leibman also suffers the requisite "unfairness" since the parties never intended for U.S. or California law or policy to apply.

> When considering fairness in this context, an important element is the expectation of the parties. See Allstate, supra, at 333 (opinion of POWELL, J.). There is no indication that when the leases involving land and royalty owners outside of Kansas were executed, the parties had any idea that Kansas law would control. Neither the Due Process Clause nor the Full Faith and Credit Clause requires Kansas "to substitute for its own [laws], applicable to persons and events within it, the conflicting statute of another state," Pacific Employees Ins. Co. v. Industrial Accident Comm'n, 306 U.S. 493, 502 (1939), but Kansas "may not abrogate the rights of parties beyond its borders having no relation to anything done or to be done within them." Home Ins. Co. v. Dick, supra, at 410.

Id., supra, 472 U.S. at 822-823.

Thus, the most important factor , the parties' expectation, for California law or policy to apply, is also missing and could not be established since Mr. Prupes has not and cannot prove that U.S. or California law was ever expected to apply or be involved. Red v. Kraft Foods, Inc., 2011 U.S. Dist. LEXIS 116965 (C.D. Cal. 2011).

Restrictively, " 'a California court may [only] properly apply' California laws 'to non-California members of a nationwide class where the defendant is a California corporation and some or all of the challenged conduct emanates from California.' Wershba v. Apple Camp., Inc., 91 Cal.App.4th 224, 243, 110 Cal. Rptr. 2d 145 (2001); Parkinson v. Hyundai, 258 F.R.D. 580, 598 (C.D. Cal. 2008)." Id. at *18.

Here, there simply is no connection between the U.S., California, Mr. Prupes, or the Russian medical clinic, which would afford fairness in using domestic laws

and policies in support of totally foreign counterclaims. As a result, the dictates of fundamental fairness are not satisfied and cannot be satisfied.

Accordingly, the Court may grant the motion for summary judgment on all six counterclaims for this reason as well.

## VI. CONCLUSION.

**WHEREFORE,** the motion for partial summary judgment and/or summary judgment on all six counterclaims is well taken as each and every one of the counterclaims rests on foreign facts, conduct, activities and contracts; and because Mr. Leibman was never Mr. Prupes' employer, and only tried to be his friend.

Dated: September 28, 2015

Respectfully Submitted,
**LAW OFFICE OF JOSEPH M. KAR, PC**

By: ______________________
Joseph M. Kar
Attorney for Plaintiff and Counter-defendant,
ALEXANDER LEIBMAN